## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOULD VENTURES, LLC, a Delaware Limited Liability Corporation, and JASON GOULD, an individual,<br><br>                       Plaintiffs,<br>vs.<br><br>COOLEY LLP, a California Limited Liability Partnership, MATT HALLIMAN, ESQ., an individual, MICHAEL TU, ESQ., an individual, ALEXANDRA MAYHUGH, ESQ., an individual, HAN WANG, ESQ., an individual, and DOES 1-20 inclusive,<br><br>                       Defendants. | CIVIL ACTION<br><br>Case Number:<br><br><br>**FILED ELECTRONICALLY**<br><br><br>**COMPLAINT and JURY DEMAND** |

Plaintiffs, Gould Ventures, LLC and Jason Gould, by way of Complaint against Defendants, say:

### THE PARTIES

1. Plaintiff Gould Ventures, LLC ("GV") is a Delaware limited liability corporation, with its principal place of business located in Toms River, New Jersey.

2. Plaintiff Jason Gould ("Gould"), a member of GV at all relevant times herein, is a resident and domiciliary of Toms River, New Jersey.

3. Defendant Cooley LLP ("Cooley") is a California limited liability partnership engaged in providing legal services throughout the country and globally, with principal places of business throughout the United States, including, but not limited to, Boston, California, Chicago, Miami, and New York.

4. Defendant Matt Hallinan ("Hallinan") is a partner at Cooley, and upon information and belief is a resident of California licensed to practice law in California.

5. Defendant Michael Tu ("Tu") is a retired partner at Cooley, and upon information and belief is a resident of California licensed to practice law in California.

6. Defendant Alexandra Mayhugh ("Mayhugh") is an attorney at Cooley, and upon information and belief is a resident of California licensed to practice law in California.

7. Defendant Han Wang ("Wang") is an attorney at Cooley, and upon information and belief is a resident of California licensed to practice law in Pennsylvania.

8. Cooley, Hallinan, Tu, Mayhugh and Wang are at times collectively referred to herein as the "Cooley Defendants."

## VENUE AND JURISDICTION

9. Venue and jurisdiction is proper in the federal district court pursuant to 28 U.S.C. 1332(a)(1) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

10. Venue and jurisdiction further is proper as there is original and federal question jurisdiction over the claims asserted herein pursuant to §27 of the Securities Exchange Act of 1934 ("Exchange Act") (specifically §10b of the Exchange Act) and 28 U.S.C. §1331, as well as supplemental jurisdiction over the state law claims as the claims asserted are part of the same controversy and arise out of a common nucleus of operative facts (28 U.S.C. §1367).

11. Venue is proper in the District of New Jersey because the events giving rise to Plaintiffs' claims occurred in New Jersey where Plaintiffs were, at all times, residing, receiving and relying upon Cooley Defendants' misrepresentations and omissions of material facts.

12. Personal jurisdiction over Cooley Defendants is appropriate because defendant Cooley, a national and global law firm, together with the individually named Cooley attorney defendants, have sufficient minimum contacts with the State of New Jersey related to the conduct at issue in this matter.

## BACKGROUND

A. **Plaintiffs' Involvement with Carbon IQ, Inc.**

13. Plaintiff GV was an early investor in a start-up company named Carbon IQ, Inc. ("Carbon IQ"), a Delaware corporation formed in 2019.

14. Benjamin Cantey ("Cantey") is the founder and CEO of Carbon IQ and was the only Director of Carbon IQ through September 1, 2022.

B. **Cooley Defendants' Retained as Corporate Counsel and Jointly Defend Carbon IQ and Cantey in Boisvert Litigation**

15. In or about March/April 2022, defendant Cooley was retained by Carbon IQ as corporate counsel.

16. On April 18 and 19, 2022, Carbon IQ and Cantey were each personally served with a California state lawsuit, captioned *Justin Boisvert v. Carbon IQ, Inc. (d/b/a Rumby), Benjamin Cantey, et al.,* Case No. 22STCV12600 (the "Boisvert Litigation"), wherein Justin Boisvert asserted various employment and fraud claims against both Carbon IQ and Cantey concerning events relating to Mr. Boisvert's early involvement with Carbon IQ in 2019/2020.

17. Cooley represented both Carbon IQ and Cantey, individually, in the Boisvert Litigation, and removed the matter to federal court in May 2022. *See Boisvert v. Carbon IQ, Inc. (d/b/a Rumby), Benjamin Cantey, et al.,* 2022-cv-3303 (C.D. Cal.).

18. On June 13, 2022, Boisvert's counsel (Russell M. Selmont, Esq.) called defendant Tu at Cooley to personally advise Tu of Cantey's fraudulent conduct with respect to both Carbon

3

IQ as well as with a prior company Cantey had been involved with in Texas. Defendant Tu was provided with specific details concerning Cantey's extensive fraudulent activities, including an active securities fraud investigation of Cantey in Texas by a Financial Examiner in the Enforcement Division of the Texas State Securities Board. *See Exhibit 1*, ¶8 (Declaration of Russell M. Selmont, dated June 13, 2023, filed with the United States Bankruptcy Court, Southern District of Ohio, in connection with *In re Carbon IQ, Inc.*, Case No. 22-12076).

19.　Thereafter, on June 15, 2022, Mr. Boisvert's counsel (Mr. Selmont) filed a Motion for Remand in the Boisvert Litigation (*see Exhibit 1*, starting at pdf p. 91), attaching sworn Declarations of Justin Boisvert, Elliot Chen, Esq. and Benjamin Smith (the CEO of the prior Texas company Cantey had defrauded). Each of these Declarations (*id*. at pdf pages 112, 123 and 128, respectively) detailed specific ways in which Cantey had engaged in fraudulent activities with respect to both Carbon IQ and Cantey's prior company, including forensic evidence of Cantey's fraudulent conduct.

C.　**Cooley Defendants' Failure to Disclose Fraud Allegations**

20.　When Cooley Defendants undertook joint defense representation of Carbon IQ and Cantey in the Boisvert Litigation, and during the time Cooley Defendants were jointly defending Carbon IQ and Cantey, Cooley Defendants knew that GV was a shareholder of Carbon IQ, that Plaintiffs were considering an additional monetary investment into Carbon IQ and that Mr. Gould was negotiating with Carbon IQ and Cantey to become a member of the Board of Directors of Carbon IQ.

21.　Despite having knowledge of these issues, Cooley Defendants deliberately and/or recklessly concealed from Plaintiffs critical information regarding fraud allegations being asserted against Cantey. These included both Cantey's fraudulent activities related to Carbon IQ and an

4

active investigation by the Texas State Securities Board into securities fraud violations tied to Cantey's previous involvement with another company in Texas.

22. While jointly representing Carbon IQ and Cantey in the Boisvert Litigation, Cooley Defendants were also continuing to assist Carbon IQ and Cantey with obtaining additional investor financing, including from Plaintiffs, as well as other investors.

23. Cantey's fraudulent misconduct - both with respect to Carbon IQ and the active Texas State Securities Board's investigation against Cantey - was material to Carbon IQ's investors, including Plaintiffs. This information was also crucial to Mr. Gould personally, as he was negotiating his position as a Board member of Carbon IQ. Despite the importance of this information, Cooley Defendants purposely, recklessly, and/or negligently failed to disclose these material facts to Plaintiffs, other shareholders, or investors of Carbon IQ, including Refinery Management.

**D.     Cooley Defendants' Continued Failure to Disclose Fraud Allegations Against Cantey While Plaintiffs are Preparing to Invest Additional Monies into Carbon IQ**

24. In July 2022, Cooley Defendants were fully aware that Plaintiffs were preparing to make a substantial investment in Carbon IQ and that Mr. Gould was anticipating taking a Board position with Carbon IQ. Despite this knowledge, Cooley Defendants willfully and purposefully withheld and failed to disclose to Plaintiffs critical material information regarding Cantey's fraudulent misconduct.

25. On July 18, 2022, Plaintiffs invested an additional $140,000.00 into Carbon IQ. They would not have invested had Cooley Defendants disclosed Cantey's egregious fraudulent conduct, which Cooley Defendants had known about for over a month. Instead, Cooley Defendants, acting in concert with Cantey, deliberately and actively concealed this material information from Carbon IQ's shareholders, investors and potential investors.

**E.    Cooley Defendants' Continued Failure to Disclose Fraud Allegations and False Representation of D&O Insurance to Induce Mr. Gould to Accept a Position as a Board Member of Carbon IQ**

26.    In August 2022, prior to accepting a Board position with Carbon IQ, Mr. Gould, through counsel, requested confirmation from Cooley Defendants that Carbon IQ had Directors and Officers (D&O) insurance to provide coverage for Mr. Gould in his anticipated capacity as a Director.

27.    On August 19, 2022, Cooley Defendants expressly confirmed to Plaintiffs via email that D&O insurance was in place to cover Mr. Gould in his capacity as a Director of Carbon IQ. *See Exhibit 2*.

28.    Prior to September of 2022, Cooley Defendants were aware that Cantey fabricated and/or forged certain documents that were produced in the Boisvert Litigation.

29.    Prior to September of 2022, Cooley Defendants failed to disclose to Plaintiffs that Cantey fabricated and/or forged certain documents in the Boisvert Litigation to Plaintiffs or other investors.

30.    Prior to September of 2022, Cooley Defendants took no action after being made aware that Cantey fabricated and/or forged certain documents in the Boisvert Litigation. Instead, they continued to defend the Boisvert Litigation and withheld undisputed evidence of Cantey's fraud from Plaintiffs and other shareholders of Carbon IQ.

31.    Prior to September of 2022, Cooley Defendants were aware that Mr. Gould was seeking financial records of Carbon IQ that would expose fraudulent activity of Cantey. Cooley Defendants failed to produce these documents until Mr. Gould accepted a position on the Board of Carbon IQ.

32. Although Cooley Defendants knew Mr. Gould's acceptance of a Board position was contingent upon the existence of adequate D&O insurance, Cooley Defendants failed to disclose to Plaintiffs that Cooley Defendants had never actually received any evidence confirming the existence of such insurance.

33. Cooley Defendants failed to disclose to Mr. Gould that, as late as of August 31, 2022, Cooley Defendants were still actively following up with Cantey to obtain documentary evidence of the existence of the D&O insurance that Cooley Defendants had already previously affirmatively confirmed existed, in writing, to Plaintiffs.

34. Throughout August 2022, Cooley Defendants further continued to actively conceal and fail to disclose to Plaintiffs the serious and material fraud allegations against Mr. Cantey, the CEO and only Board member of Carbon IQ. Cooley Defendants had been aware of these allegations since at least mid-June 2022.

35. Relying on Cooley Defendants' August 19, 2022, written email confirmation of the existence of adequate D&O insurance to cover Mr. Gould as a Director of Carbon IQ (*see Exhibit 2*) Mr. Gould accepted the Director position at Carbon IQ on September 1, 2022, as intended.

36. At no point prior to September of 2022 did Cooley Defendants disclose to Plaintiffs and/or other shareholders that it was in possession of undisputed evidence that Cantey had forged/fabricated documents in the Boisvert Litigation.

37. Mr. Gould would not have accepted a position as a Board member of Carbon IQ had he known that Cooley Defendants were in possession of undisputed evidence that Cantey had forged/fabricated documents in the Boisvert Litigation.  Mr. Gould would not have accepted a position as a Board member of Carbon IQ had he known that the D&O insurance, which Cooley Defendants falsely misrepresented as existing, was not in place.

38. Mr. Gould also would not have accepted a position as a Board member of Carbon IQ had Cooley Defendants disclosed the material fraud allegations against Cantey, which Cooley Defendants wrongfully and actively concealed from Plaintiffs, as well as other investors and potential investors of Carbon IQ.

**F.     The Cooley Defendants' Purposely Misleading "Case Description for Investors"**

39. Cooley Defendants' purposeful concealment of the material fraud allegations against Cantey - intended to assist Cantey and Carbon IQ in securing additional financing for Carbon IQ - is clearly revealed in a "Case Description for Investors" prepared by Cooley Defendants in August 2022 concerning the Boisvert Litigation.

40. Cooley Defendants' August 2022 "Case Description for Investors" (attached as *Exhibit 3*) purposely and knowingly omits any reference to the serious fraud allegations against Cantey that were revealed in the Boisvert Litigation. Despite actively defending Cantey individually in that litigation, Cooley Defendants simultaneously served as Carbon IQ's corporate counsel, creating a clear conflict of interest that resulted in harm to Carbon IQ and its shareholders.

**G.     Refinery Management, LLC**

41. Cooley Defendants' misconduct, as outlined herein, directly caused Mr. Gould to be personally named in a lawsuit filed by Refinery Management, LLC (the "Refinery Litigation").

42. Refinery Management, LLC invested Three Million dollars ($3,000,000.00) into Carbon IQ on August 26, 2022, just days before Mr. Gould, relying on Cooley Defendants' false representations and material non-disclosures, accepted a position as a Board member of Carbon IQ, on September 1, 20222.

43. As an existing shareholder and investor prior to September 1, 2022, and as someone Cooley Defendants were actively working with to appoint as a Director, Cooley Defendants owed

a duty of care to Mr. Gould (and his company, GV) to disclose the material fraud allegations asserted against Cantey, which involved both Carbon IQ and the ongoing Texas State Securities Board investigation.

44. Plaintiffs were eventually sued by Refinery Management, LLC due to Cooley Defendants failure to disclose critical details regarding Cantey's fraud. See *Refinery Management, LLC v. Carbon IQ, Inc., et al.*, 1:22-cv-00706 (S.D. Ohio 2022).

45. If Cooley Defendants had disclosed to Plaintiffs the material fraud allegations against Cantey related to Carbon IQ and the active investigation by the Texas State Securities Board, Plaintiffs would not have made the additional $140,000 investment in July 2022, would not have considered or accepted the board seat at Carbon IQ, and would not have participated in the call with Refinery Management, LLC in August 2022. The concealment of this information caused Plaintiffs to make decisions they would have otherwise avoided, including the investment, the board seat, and the interactions with Refinery Management.

46. Furthermore, if Cooley Defendants had disclosed to Plaintiffs the material fraud allegations asserted against Cantey related to Carbon IQ and the ongoing Texas State Securities Board investigation, and had not falsely misrepresented to Plainiffs that Carbon IQ had D&O insurance, Mr. Gould would not have accepted a position on Carbon IQ's Board of Directors. As a direct result, he would not have been named in a lawsuit brought by Refinery Management.

**H.    Cooley Defendants Continue to Actively Conceal Material Information from Plaintiffs After Mr. Gould Becomes a Director on September 1, 2022**.

47. Upon becoming a Board member on September 1, 2022, Cooley Defendants still failed to disclose to Mr. Gould the serious fraud allegations against Cantey in the Boisvert Litigation or the ongoing Texas State Securities Board investigation into Cantey. Additionally,

9

they never revealed that they had no documentary proof of the existence of D&O insurance to cover Mr. Gould.

48. Late September 2022 emails between Cooley Defendants and Cantey confirm their continued efforts to assist Cantey in concealing his fraudulent conduct. Despite knowing of Mr. Gould's concerns about potential fraud and his repeated requests for documents, Cooley Defendants admitted to "trying to avoid" Mr. Gould's calls and described him as "persistent/demanding." The emails show that while Cooley acknowledged Mr. Gould's growing suspicions, they prioritized protecting Cantey and managing the company's optics, expressing concern that Mr. Gould's demands could "cripple the company's financial availability" and "hinder potential financing options." Cooley's focus on protecting Cantey, while withholding the fraud allegations and the Texas State Securities Board investigation from Mr. Gould, demonstrates a clear conflict of interest and a breach of their fiduciary duty and duty of care to Mr. Gould as a board member. By failing to disclose these critical facts to Mr. Gould, Cooley breached their fiduciary duty and duty of care, leaving Mr. Gould uninformed about material fraud allegations and ultimately leading to his continued involvement in Carbon IQ as a board member under false pretenses. *See Exhibit 4*.

I. **Cooley Defendants Withdraw as Counsel for Carbon IQ and Cantey**

49. Mr. Gould's persistent demands in late September 2022 for the production of corporate documents and financial records from Cooley Defendants and Cantey ultimately led to the discovery of Cantey's extensive fraudulent conduct.

50. On October 7, 2022, Cantey admitted to Cooley Defendants that Cantey had engaged in widespread fraud, including securities fraud at Carbon IQ, falsifying business and financial information, and misappropriating investor funds in Carbon IQ. Following this

admission. Cantey sought advice from Cooley Defendants on how to address his admitted fraudulent conduct with Mr. Gould. *See Exhibit 5.*

51. Only after Cantey's admission of fraud and securities violations at Carbon IQ did Cooley Defendants inform Plaintiffs, on October 10, 2022, that they were withdrawing as counsel for both Carbon IQ and Cantey.

52. At no time prior to their withdrawal as counsel did Cooley Defendants disclose to Plaintiffs their prior concealed knowledge of the fraud allegations against Cantey, including those related to Carbon IQ and the ongoing Texas State Securities Board investigation against Cantey. These material nondisclosures caused significant harm to Plaintiffs, as well as to Carbon IQ and its other investors.

53. At no time prior to their withdrawal as counsel did Cooley Defendants ever disclose to Plaintiffs that Carbon IQ in fact had never obtained D&O insurance, thus leaving Mr. Gould unprotected as a Director of Carbon IQ at a time when Cooley Defendants knew Carbon IQ's CEO and previously sole Board member was being charged with and investigated for multiple fraud allegations relating to both Carbon IQ and the prior company Cantey had been involved with.

54. Mr. Gould has been sued personally by a Carbon IQ investor, Refinery Management, LLC, and has been forced to expend, and continue to expend, personal funds to defend himself due to the absence of the D&O insurance that Cooley Defendants falsely confirmed was in place. Furthermore, he remains at personal risk for any judgment that may be obtained in that litigation, as a result of Cooley Defendants' false representation that adequate D&O insurance was in place to cover Mr. Gould.

55. Cooley Defendants were aware of the full extent of the material fraud allegations against Cantey and failed to disclose this critical information to Plaintiffs. This nondisclosure

occurred despite their ongoing involvement and communication with Plaintiffs during the summer of 2022 regarding both investments in Carbon IQ and Mr. Gould's appointment to the Board of Carbon IQ.

56. At a minimum, Cantey's misconduct raised serious and obvious red flags (such as the likelihood that Cantey was engaging in further fraudulent activity and the difficulty Carbon IQ would have in obtaining D&O insurance given the claims against it), which only Cooley Defendants were aware of. Cooley Defendants chose to ignore and conceal this material information from Carbon IQ's shareholders and investors, including Plaintiffs.

## COUNT I

### (Violation of §10(b) of the Exchange Act and Rule 10b-5)

57. Plaintiffs repeat and reallege each and every allegation set forth above as if more fully stated herein.

58. In violation of §10(b) of the Exchange Act and Rule 10b-5 Cooley Defendants engaged in a scheme and course of conduct to deceive and mislead Plaintiffs, including but not limited to purposely and knowingly concealing material facts regarding fraud allegations against Carbon IQ's founder, Cantey, directly relating to his actions as CEO and the then sole board member of Carbon IQ as well as relating to an ongoing Texas State Securities Board investigation into Cantey concerning fraudulent activities by the Texas State Securities Board in connection with a prior entity Cantey had been involved with in Texas.

59. Had Cooley Defendants disclosed these material facts, Plaintiffs would not have made additional investments in Carbon IQ in July 2022.

60. Cooley Defendants knew and intended that their nondisclosure of these material facts would cause Plaintiffs to continue to invest in Carbon IQ and that the continued purposeful

nondisclosure of these material facts would further act as an inducement to Mr. Gould to agree to later accept a position as a Director of Carbon IQ on September 1, 2022.

61. Plaintiffs reasonably relied on Cooley Defendants omissions of material facts. As a direct and proximate result of Cooley Defendants violation of §10(b) of the Exchange Act and Rule 10b-5, Plaintiffs have suffered significant financial harm, including the loss of their investment, legal expenses, liability exposure in the Refinery Litigation, and related consequential damages.

## COUNT II

### (Common Law Fraud)

62. Plaintiffs repeat and reallege each and every allegation set forth above as if more fully stated herein.

63. Cooley Defendants made fraudulent representations directly, and by omission, to Plaintiffs, including, but not limited to, purposely and knowingly concealing critical material information regarding Cantey's known fraudulent activities and falsely confirming to Plaintiffs that D&O insurance existed to cover Mr. Gould as a Director, despite knowing Cooley Defendants had no such evidence that such insurance existed, which, in fact, did not exist.

64. Cooley Defendants knew or should have known that Plaintiffs would rely on their material misrepresentations and omissions of material fact.

65. Plaintiffs reasonably relied on Cooley Defendants' fraudulent misrepresentations and omissions of material fact to their detriment.

66. Plaintiffs suffered damages as a direct and proximate result of Cooley Defendants' purposeful fraudulent misrepresentations and knowing omissions of material fact, including the loss of their investment, legal expenses, liability exposure in the Refinery Litigation, and related consequential damages.

## COUNT III

### (Aiding and Abetting Fraud)

67. Plaintiffs repeat and reallege each and every allegation set forth above as if more fully stated herein.

68. Cooley Defendants knowingly assisted Cantey in his fraudulent activities by providing legal guidance and deliberately working in concert with Cantey to conceal and fail to disclose material information to shareholders, investors and the board, including purposely and knowingly concealing from Plaintiffs critical material information concerning known fraudulent activity by Cantey and falsely confirming to Plaintiffs that D&O insurance existed to cover Mr. Gould as a Director when Cooley Defendants knew that they had no evidence that such insurance existed, which in fact did not exist.

69. Cooley Defendants actions and omissions amounted to aiding and abetting fraud, as they purposely and knowingly enabled Cantey to continue defrauding investors, including Plaintiffs.

70. As a direct result of Cooley Defendants' aiding and abetting of Cantey's fraud. Plaintiffs suffered financial and legal harm, including the loss of their investment, legal expenses, liability exposure in the Refinery Litigation, and related consequential damages.

## COUNT IV

### (Negligent Misrepresentation)

71. Plaintiffs repeat and reallege each and every allegation set forth above as if fully stated herein.

72. Cooley Defendants negligently made false representations, both directly and by omission, to Plaintiffs.

73. Cooley Defendants negligently, at best, failed to timely inform Plaintiffs of critical material information regarding Cantey's fraudulent activities. They also negligently, at best, falsely represented to Mr. Gould that adequate D&O insurance was in place to cover Mr. Gould as a Director, when no such insurance existed.

74. Cooley Defendants knew or should have known that Plaintiffs would rely on their material misrepresentations and omissions of material fact.

75. Plaintiffs reasonably relied to their detriment on Cooley Defendants' omissions of material facts concerning Cantey's fraudulent misconduct when Plaintiffs invested an additional $140,000.00 in Carbon IQ in July 2022.

76. Plaintiffs further reasonably relied to their detriment on Cooley Defendants continued failure to disclose to Plaintiffs the known material fraudulent activities of Cantey both before and after Gould accepted the Board position on September 1, 2022.

77. Plaintiff Gould reasonably relied to his detriment on Cooley Defendants material misrepresentation concerning the existence of D&O insurance when Gould, based on Cooley Defendants' misrepresentation, accepted a board of director position on September 1, 2022 that he otherwise would not have accepted absent Cooley Defendants' misrepresentation.

78. Cooley Defendants misrepresentations and omissions of material fact directly and proximately caused Plaintiffs to suffer extensive monetary damages, including the loss of their investment, legal expenses, liability exposure in the Refinery Litigation, and related consequential damages.

## COUNT V

### (Breach of Fiduciary Duty)

79. Plaintiffs repeat and reallege each and every allegation set forth above as if fully stated herein.

80. Cooley Defendants owed fiduciary duties to Plaintiffs as a shareholder and investor in Carbon IQ, and to Mr. Gould individually as an anticipated and subsequently appointed member of the Board of Carbon IQ. These duties included, but were not limited to, the duties of disclosure, good faith, due care, honesty and in the obligation to avoid self-dealing.

81. Cooley Defendants breached their fiduciary duties to Plaintiffs by, among other things, purposely, recklessly and/or negligently failing to disclose known material fraudulent conduct by Cantey both with respect to Carbon IQ and the prior business entity Cantey was involved with. Additionally, Cooley Defendants falsely confirmed to Mr. Gould that Carbon IQ had sufficient D&O insurance in place to cover Mr. Gould if he were to accept a position on Carbon IQ's Board of Directors when Cooley Defendants knew or should have known no such insurance existed, and thereafter continuing to assist Cantey and Carbon IQ in obtaining additional financing by purposely concealing and withholding critical material information concerning Cantey's fraudulent misconduct.

82. Cooley Defendants breaches of fiduciary duty were the direct and proximate cause of extensive economic damages suffered by Plaintiffs, including the loss of their investment, legal expenses, liability exposure in the Refinery Litigation, and related consequential damages.

## COUNT VI

### (Legal Malpractice)

83. Plaintiffs repeat and reallege each and every allegation set forth above as if more fully stated herein.

84. Cooley Defendants served as retained corporate and defense counsel for both Carbon IQ and for Cantey at all relevant times mentioned herein.

85. As such, and under the circumstances set forth herein, Cooley Defendants owed a duty of care to Plaintiffs as shareholders and investors in Carbon IQ and to Gould as a potential and subsequently appointed board member of Carbon IQ.

86. Cooley Defendants breached their duty of care to Plaintiffs when, among other things, from June 2022 through October 2022, Cooley Defendants knowingly and deliberately failed to disclose to Plaintiffs the known fraudulent misconduct of Cantey as presented to Cooley Defendants in and through the Boisvert Litigation (including an ongoing Texas State Securities Board investigation against Cantey) which Cooley Defendants were actively defending against on behalf of both Cantey and Carbon IQ.

87. Cooley Defendants knew or should have known that timely disclosure to Plaintiffs of Cantey's fraudulent conduct, would have caused Plaintiffs to refuse to invest additional funds in Carbon IQ in July 2022.

88. Cooley Defendants knew or should have known that Carbon IQ did not have any D&O insurance but nevertheless falsely confirmed to Gould that adequate D&O insurance was in place to cover Gould as a Director of Carbon IQ.

89. Cooley Defendants knew or should have known that if they had not falsely confirmed the existence of D&O insurance Mr. Gould would have refused appointment to the Board of Directors of Carbon IQ on September 1, 2022.

90. Cooley Defendants intended and knew Plaintiffs would rely on their false representations and omissions of material facts.

91. Plaintiffs in fact relied upon Cooley Defendants false representations and omissions of material fact to Plaintiffs' detriment.

92. Plaintiffs suffered extensive monetary damages as a result of Cooley Defendants legal malpractice, including the loss of their investment, legal expenses, liability exposure in the Refinery Litigation, and related consequential damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request entry of judgment in favor of Plaintiffs and against the Defendants, jointly and severally, awarding Plaintiffs the following relief:

a. Compensatory damages;

b. Consequential damages;

c. Punitive damages as allowed by law;

d. Full indemnification by and from Cooley Defendants for any and all costs, expenses, legal fees and liability relating to the Refinery Litigation;

e. Attorneys' fees and costs of suit;

f. Pre- and post-judgment interest; and

g. Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs hereby demand a jury trial with respect to all Counts herein.

Dated:  September 26, 2024       */s/ Kathleen M. DalCortivo*
                                  Kathleen M. DalCortivo
                                  **DalCortivo Law Offices, LLC**
                                  680 Hooper Ave., Bldg. A, Suite 101
                                  Toms River, NJ  08753
                                  Tel:  (732) 286-0100
                                  Fax: (732) 286-0101
                                  NJ Attorney ID No.:  050121991
                                  *Attorneys for Plaintiffs*