**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<table>
<tr>
<td>

GOULD VENTURES, LLC and,
JASON GOULD,

     Plaintiffs,

v.

COOLEY LLP, *et al.*,

     Defendants.

</td>
<td>

Civil Action No. 24-9485 (RK) (TJB)

**OPINION**

</td>
</tr>
</table>

**KIRSCH, District Judge**

     **THIS MATTER** comes before the Court upon Defendants Cooley LLP ("Cooley"), Matt Hallinan, Esq., Michael Tu, Esq., Alexandra Mayhugh, Esq., Han Wang, Esq.'s Motion to Dismiss the Complaint. (ECF No. 27.) Plaintiffs Gould Ventures, LLC ("Gould Ventures") and Jason Gould opposed the Motion, (ECF No. 29), and Defendants replied, (ECF No. 28). The Court has carefully considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motion is **GRANTED in part** and **DENIED in part**.

## I.    BACKGROUND[1]

     Gould Ventures and its member Jason Gould bring this action against Defendant Cooley and four of its current and former attorneys for securities fraud and other common law torts arising from Gould's business relationship with Defendants' now-former clients, start-up company

---

[1] The facts set forth in this Opinion are taken as true directly from the Complaint for the sole purpose of deciding Defendants' pending Motion. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

Carbon IQ, Inc. and its founder Benjamin Cantey, and the alleged misrepresentations and omissions by Defendants that induced that relationship.

The Court provides at the outset a short chronology of events most relevant to Plaintiffs' claims. The Court takes these facts directly from the Complaint, its exhibits, and matters of public record.

- On an unknown date, before the events giving rise to this matter, Gould Ventures invested an unspecified amount of money in Carbon IQ.

- In March/April 2022, Cooley was retained by Carbon IQ as corporate counsel.

- On April 14, 2022, Carbon IQ and its Chief Executive Officer ("CEO") Benjamin Cantey were named in a California state lawsuit brought by alleged Carbon IQ co-founder Justin Boisvert.

- On June 13, 2022, Boisvert's attorney called Defendant Tu to inform him that Cantey had engaged in fraudulent conduct at Carbon IQ and Cantey's former company, Plot.

- On June 15, 2022, Boisvert filed a motion to remand in the California lawsuit, detailing Cantey's alleged fraud.[2]

- On July 18, 2022, Gould Ventures invested an additional $140,000 in Carbon IQ.

- On August 16, 2022, Gould's attorney emailed Defendant Wang inquiring about Directors and Officers ("D&O") insurance.

- On August 19, 2022, Wang confirmed that Carbon IQ had D&O insurance.

- On August 26, 2022, Refinery Management invested $3 million in Carbon IQ.

- On September 1, 2022, Gould accepted a seat on Carbon IQ's Board of Directors.

- On October 7, 2022, Cantey admitted in an email to Defendants that he had engaged in widespread fraud, including securities fraud, at Carbon IQ.

- On October 10, 2022, Defendants informed Plaintiffs about Cantey's admissions and withdrew as counsel for both Carbon IQ and Cantey.

---

[2] On February 3, 2023, the court remanded Boisvert's case to Los Angeles Superior Court. *Boisvert v. Carbon IQ*, No. 22-3303, ECF No. 41 (C.D. Cal.).

- On November 30, 2022, Refinery Management sued Cantey, Gould, and Carbon IQ for securities fraud, among other claims.

## A.    BOISVERT LITIGATION

In April 2022, Carbon IQ and its founder and CEO Benjamin Cantey were served with a California state lawsuit. (ECF No. 1 ("Compl.") ¶¶ 14, 16.) In that complaint, Justin Boisvert, who allegedly co-founded Carbon IQ with Cantey, brought employment discrimination, breach of contract, fraud, and other common law tort claims against Carbon IQ and Cantey arising from Boisvert's early involvement with Carbon IQ in 2019 and 2020. *Boisvert v. Carbon IQ*, No. 22-3303, ECF No. 1-2 at 6–32 (C.D. Cal.); (Compl. ¶ 16.)[3] Cooley represented Carbon IQ and Cantey in the lawsuit. (Compl. ¶ 15.) In May 2022, Cooley, on behalf of its clients, removed the case. (*Id.* ¶ 17); *see also Boisvert v. Carbon IQ*, No. 22-3303, ECF No. 1.

Plaintiffs, here, allege that, following removal, Boisvert's attorney called Defendant Tu, a now-retired partner at Cooley, to advise Tu that Cantey had engaged in fraudulent conduct at Carbon IQ and a prior company in Texas. (Compl. ¶ 18.) In that conversation, on June 13, 2022, Plaintiffs assert that Boisvert's attorney provided Tu with "specific details of Cantey's extensive fraudulent activities, including an active securities fraud investigation of Cantey by . . . the Texas Securities Board." (*Id.*)

On June 15, 2022, Boisvert moved to remand the case. (*Id.* ¶ 19); *Boivert v. Carbon IQ*, No. 22-3303, ECF No. 11. As part of his remand motion, Boisvert attached a 221-page appendix. *Boisvert v. Carbon IQ*, No. 22-3303, ECF No. 11-1. That appendix included three declarations detailing Cantey's fraudulent conduct and evidence of that conduct. (Compl. ¶ 19.) Cantey's fraud included the creation of various forged documents in Boisvert's Carbon IQ personnel file and a

---

[3] The Court takes judicial notice of the publicly available filings in the *Boisvert* case. *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

forged data licensing agreement at Plot, Cantey's Texas company, from which he was fired in June 2019. *Id.* at 5–25; (Compl. ¶19.)

**B.    PLAINTIFFS' RELATIONSHIP WITH CARBON IQ AND DEFENDANTS' ALLEGED FRAUD**

Gould Ventures was an early investor and shareholder in Carbon IQ. (Compl. ¶¶ 13, 20.) Plaintiffs allege that at the time that Cooley undertook the joint defense of Cantey and Carbon IQ in the *Boisvert* case, they knew that Plaintiffs were considering additional investments in Carbon IQ and that Gould himself was negotiating to become a member of the Board of Directors of Carbon IQ. (*Id.* ¶ 20.) Plaintiffs assert that Defendants failed to disclose to them the *Boisvert* fraud allegations against Cantey and the Texas State Securities Board investigation regarding Plot, despite knowing about them as early as June 2022. (*Id.* ¶¶ 21, 25.)

On July 18, 2022, Plaintiffs invested an additional $140,000 in Carbon IQ. (*Id.* ¶ 25.) Plaintiffs allege that if they had known about the *Boisvert* fraud allegations and the Texas investigation, they would not have made this additional investment in Carbon IQ. (*Id.*)

In August 2022, Gould, through his attorney, requested confirmation from Defendants that Carbon IQ had D&O insurance to cover Gould as a director. (*Id.* ¶ 26.) In an August 16, 2022 email to Defendant Wang attached to the Complaint, Gould's counsel asked Wang to "please . . . confirm that the company has adequate D&O insurance to cover [Gould] as a director?" (ECF No. 1-2 ("D&O Email Chain").) On August 19, 2022, Wang responded, "Confirmed on the insurance." (*Id.*) Gould's attorney forwarded Wang's response to Gould the next day. (*Id.*)

Plaintiffs allege that prior to Gould's appointment as a director of Carbon IQ in September 2022, Defendants were "aware" that Gould was seeking financial records from Carbon IQ that would expose Cantey's fraudulent activity. (Compl. ¶ 31.) However, according to Plaintiffs, Defendants failed to produce these documents "until Gould accepted a position on the Board of

Carbon IQ." (*Id.*) Plaintiffs allege that Defendants had "never actually received any evidence confirming the existence of [D&O] insurance" and failed to disclose that fact to Plaintiffs. (*Id.* ¶ 32.) Although Defendants had already confirmed the existence of a D&O policy to Plaintiffs, allegedly as late as August 31, 2022, Defendants were still attempting to obtain documentary proof that insurance. (*Id.* ¶ 33.) Plaintiffs assert that Gould accepted the director position on September 1, 2022 in reliance on Wang's August 2022 written email confirmation of D&O insurance. Plaintiffs allege that had Gould known about the forged documents at issue in the *Boisvert* litigation or that there was, in fact, no D&O insurance coverage, he would not have accepted the Board seat. (*Id.* ¶ 37.)

Plaintiffs also point to a description of the *Boisvert* litigation prepared by Defendants for Carbon IQ investors in August 2022. (*Id.* ¶ 39.) In that case description, attached to the Complaint, there is no mention of the documents that Cantey was accused of forging or that Boisvert alleged a fraud claim against Cantey. (*Id.* ¶ 40; ECF No. 1-3 ("Case Description for Investors").) There is no allegation in the Complaint that Plaintiffs relied on the Case Description before investing in Carbon IQ or before Gould accepted a Board position.

In addition, Plaintiffs allege that an email exchange between Defendants and Cantey in late September 2022, confirms Defendants "continued efforts to assist Cantey in concealing his fraudulent conduct." (Compl. ¶ 48.) In that email exchange, attached to the Complaint, Defendant Hallinan emailed Cantey on September 28, 2022, stating the following:

> [Gould] called me a few times again and I finally picked up (he is pretty persistent/demanding)—was trying to avoid it as would have been an easier call if term sheet came over but my role as Company counsel (reporting to board) makes it challenging to avoid his requests as the board is really our client.
> He is really concerned that term sheet didn't come over yet especially with you attending some event at another investor's LP gathering—sure you're busy and all over place in New York. [Gould] did specifically say that his next course of action is to send a demand letter threatening a lawsuit as he's jumped to the

conclusion that since it didn't come over, it doesn't exist. He said he's concerned that the term sheet or expectation of one was used to have his network invest and as a board member he would be implicated in a lawsuit if it never existed as could be construed as securities fraud.

He's obviously upset—he kept rambling on about why it's so hard to forward an email and his mind is leaping to all sorts of conclusions without really any facts. He mentioned that he's somewhat concerned that this is just the tip of the iceberg and even mentioned the word "ponzi" scheme and if term sheet doesn't exist needs to figure out where the company is at as he's concerned that the financials, etc. are all fabricated. I tried to calm him down and just mentioned the timing aspect, but he's really frustrated so I don't think his threat was just emotional, but hard to really tell and you know him better.

Putting aside the allegations, my concern for the Company here is that if this letter does come coupled with the other lawsuit, then what was already a challenging narrative becomes next to impossible so would really hinder potential financing options. This is harder to really mitigate since he's a board member, so a board member really wouldn't go to these lengths without risking a suit from the other stockholders for breaching fiduciary duties as it would really hurt the Company's prospect.

Happy to discuss this and always willing to discuss strategy with dealing with these sorts of things, but really concerned that if this doesn't get sorted soon he's going to do something irrational and that has a high chance of crippling the company's financial availability. Know you're probably busy and he's just jumping to conclusions, but in the off chance that the term sheet doesn't exist, my sense is that just calling him and explaining situation and then getting an accountant to walk him through the financials and bank accounts would probably avert a disaster situation—see a lot of times where email terms etc. lead fall apart so think at least you need to call him and just explain situation as much as possible. It's really hard to be a CEO/Founder, and have seen others in similar situations, so here to help out.

(ECF No. 1-4 ("Hallinan Email") at 2–3.)

## C.    CANTEY'S ADMITTED FRAUD

Not long after this email was sent, on October 7, 2022, Cantey admitted in writing to Defendants that he had "engaged in widespread fraud, including securities fraud at Carbon IQ, falsifying business and financial information, and misappropriating investor funds in Carbon IQ."

(Compl. ¶ 50; *see also* ECF No. 1-5.)[4] Cantey sought advice from Defendants on how to "address" his fraud with Gould. (*Id.*)

On October 10, 2022, Defendants informed Plaintiffs about Cantey's admissions and withdrew as counsel for both Carbon IQ and Cantey. (*Id.* ¶ 51.) According to Plaintiffs, that communication was the first time that Defendants disclosed any of Cantey's fraudulent conduct to Plaintiffs. (*Id.* ¶¶ 52–53.)

### D.    REFINERY MANAGEMENT LITIGATION

Plaintiffs allege that as a result of Defendants' failure to disclose Cantey's fraud, Gould was personally named in a securities fraud lawsuit[5] filed by one of Carbon IQ's investors, Refinery Management, LLC. (*Id.* ¶¶ 41–42.) Refinery Management invested $3 million in Carbon IQ on August 26, 2022, days before Gould become a Board member. (*Id.* ¶ 42.) Plaintiffs allege that Gould would never have been named in the Refinery Management case if Defendants had disclosed Cantey's fraud allegations in the *Boisvert* litigation and the Texas securities investigation. (*Id.* ¶¶ 45–46.) Plaintiffs assert that Gould "has been forced to expend, and continue[s] to expend, personal funds defend himself due to the absence of the D&O insurance that [Defendants] falsely confirmed was in place." (*Id.* ¶ 54.)

### E.    PROCEDURAL HISTORY

On September 26, 2024, Plaintiffs filed the Complaint, alleging the following claims based on the above allegations: (1) violation of § 10(b) of the Exchange Act and Rule 10b-5, (2) common

---

[4] In December 2024, Cantey was indicted in the Southern District of Ohio in connection with these fraudulent activities. *Grand jury charges Cincinnati man with crimes related to $6.5 million fraud scheme*, U.S. Attorney's Office, Southern District of Ohio, https://www.justice.gov/usao-sdoh/pr/grand-jury-charges-cincinnati-man-crimes-related-65-million-fraud-scheme.

[5] Refinery Management's lawsuit, which was filed on November 30, 2022, is pending before the United States District Court for the Southern District of Ohio. *Refinery Management, LLC v. Carbon IQ, Inc.*, No. 22-0706, ECF No. 1 (S.D. Ohio Nov. 30, 2022).

law fraud, (3) aiding and abetting fraud, (4) negligent misrepresentation, (5) breach of fiduciary duty, and (6) legal malpractice. (Compl. ¶¶ 57–92.) Plaintiffs seek compensatory, consequential, and punitive damages as well as "[f]ull indemnification" by Defendants for "any and all costs, expenses, legal fees and liability relating to the Refinery Litigation." (*Id.* at 18.) Defendants moved to dismiss the Complaint in its entirety on March 13, 2025. (ECF No. 27.) That Motion is now ripe for the Court's review.

## II.    LEGAL STANDARD

### A.    MOTION TO DISMISS UNDER RULE 8

Rule 8 of the Federal Rules of Civil Procedure requires plaintiffs to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each averment must be 'simple, concise, and direct.'" *Washington v. Warden SCI-Greene*, 608 F. App'x 49, 52 (3d Cir. 2015) (quoting Fed. R. Civ. P. 8(d)(1)). "Taken together, Rules 8(a) and [8(d)(1)] underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996). At its core, the purpose of a pleading is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Broadly alleging multiple defendants' wrongdoing in a complaint without pleading their individual acts or liability runs afoul of Rule 8's requirements. *See Shaw v. Hous. Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) ("Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." (citation omitted)).

### B.    MOTION TO DISMISS UNDER RULE 12(B)(6)

For a complaint to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must contain "sufficient factual matter" to state a claim for relief that is "plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### C.    MOTION TO DISMISS UNDER RULE 9(B)

For fraud claims, a complaint is subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading standard "[i]ndependent of the standard applicable to Rule 12(b)(6) motions." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The complaint must allege "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)); *see also Alpizar-Fallas v. Favero*, 908 F.3d 910, 919 (3d Cir. 2018). In other words, a plaintiff must "provide the requisite specificity as to the who, what, where, when, and how of the alleged fraud." *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 614 (D.N.J. 2014); *see also United States ex rel. Bookwalter v. UPMC*, 946 F.3d 162, 176 (3d Cir. 2019). Rule 9(b)'s heightened pleading standard "ensure[s] that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks and citations omitted).

In addition to satisfying Rule 9(b), plaintiffs alleging securities fraud pursuant to the Exchange Act must also comply with the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4, *et seq.* The PSLRA "imposes another layer of factual particularity to allegations of securities fraud." *In re Rockefeller Ctr.*, 311 F.3d at 217. To allege fraud under the PSLRA, a plaintiff must "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 321 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194, and n.12 (1976)). "The purpose of the heightened pleading requirements is to ensure that private securities actions do not become 'a partial downside insurance policy' against the vicissitudes of the market."

*In re Newell Brands, Inc. Sec. Litig.*, 837 F. App'x 869, 874 (3d Cir. 2020) (quoting *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp*, 908 F.3d 872, 880 (3d Cir. 2018)).

### III.    <u>DISCUSSION</u>

Defendants raise numerous grounds for dismissal of the Complaint in its entirety. *First*, they argue that Plaintiffs have engaged in impermissible group pleading under Rule 8. *Second*, Defendants argue that Plaintiffs' fraud claims fail because they do not adequately plead an actionable misrepresentation or omission before Plaintiffs' July 18, 2022 investment in Carbon IQ, before Gould joined Carbon IQ's Board on September 1, 2022, and after Gould accepted the Carbon IQ Board seat. *Third*, Defendants assert that Plaintiffs have failed to sufficiently plead the required state of mind for any Defendant. *Fourth*, they argue that Plaintiffs have failed to plead that they reasonably relied on any alleged misrepresentation. *Fifth*, Defendants contend that Plaintiffs' allegations do not sufficiently plead proximate cause. *Sixth*, Defendants argue that the Court should dismiss the claims against Defendants Mayhugh and Tu because Gould never interacted with them. *Seventh*, Defendants assert that Plaintiffs' legal malpractice claim fails because Plaintiffs have failed to plead an attorney-client relationship. *Eighth*, they argue that Plaintiffs have failed to plead a fiduciary relationship. *Finally*, Defendants argue that Plaintiffs' aiding and abetting fraud claim fails because they have not sufficiently pled any Defendants' knowing assistance in a fraud.

The Court will address these arguments in their most logical sequence.

### A.    GROUP PLEADING AND CLAIMS AGAINST MAYHUGH AND TU

Defendants argue that the Complaint fails to comply with Rule 8 because Plaintiffs engage in impermissible group pleading. (ECF No. 27-1 ("Defs. Br.") at 21.) They also contend that the Complaint fails to allege that Gould "ever interacted with" Defendants Mayhugh and Tu or that "they were ever involved as corporate counsel for Carbon IQ." (*Id.* at 36–37.)

"[A] complaint may not indiscriminately attribute wrongdoing to a group of defendants, leaving them to guess as to who allegedly did what." *Yu-Chin Chang v. Upright Fin. Corp.*, No. 19- 18414, 2020 WL 473649, at *3 (D.N.J. Jan. 28, 2020). "This type of pleading fails to satisfy Rule 8 because it does not place Defendants on notice of the claims against each of them." *Mills v. Ethicon, Inc.*, 406 F. Supp. 3d 363, 386–87 (D.N.J. 2019) (internal quotation marks omitted). To allege that "Defendants" as a group engaged in "certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards." *Id.* (internal quotation marks omitted).

Plaintiffs name Cooley, a law firm, and four of its current and former attorneys as Defendants. An entity like Cooley can act and be held liable only by virtue of the actions of its attorneys or agents. *See Yu-Chin Chang*, 2020 WL 473649, at *3. Plaintiffs argue that the email communications attached to the Complaint make clear which attorneys engaged in the conduct alleged. (ECF No. 29 ("Pls. Br.") at 18.) Those email communications, however, concern only Defendants' conduct related to the D&O insurance and term sheet. (*See* D&O Email Chain; Hallinan Email.) Plaintiffs also rely in their briefing on an invoice that was filed in an adversary proceeding in a federal bankruptcy court in Ohio. (*Id.* at 10–12.) They assert that this invoice demonstrates that Tu, Hallinan, and Mayhugh were involved in preparing the Case Description for Investors. (*Id.* at 18.) That invoice is neither pled in the Complaint nor attached to it.

The Court recognizes that Cooley can only act through its human agents, but there are four potential agents whose actions Plaintiffs seek to impute to Cooley and also to hold liable individually. The Complaint itself does not identify which of the four attorney Defendants were involved in the negotiations surrounding Plaintiffs' $140,000 investment or his Board seat as well

as which attorneys were involved in preparing the Case Description for Investors. Instead, they plead that all five "Cooley Defendants" engaged in this conduct. It is not easily inferable from Plaintiffs allegations which of Cooley's four agents performed which acts; Defendants are, therefore, left in the dark about who did what. *See Yu-Chin Chang*, 2020 WL 473649, at *3. The Court finds that this group pleading fails to meet the requirements of Rule 8. The Court will allow Plaintiffs an opportunity to amend their pleading to cure this deficiency and any other deficiencies identified in this Opinion.

Similarly, regarding the claims against Mayhugh and Tu, Plaintiffs allege that these Defendants were attorneys at Cooley and that Tu spoke to counsel for Boisvert about the fraud allegations against Cantey. (Compl. ¶¶ 5–6, 18.) The Court finds that these allegations are insufficient to state any of Plaintiffs' claims against Mayhugh and Tu as individuals. Indeed, Plaintiffs attribute no conduct to Mayhugh in the Complaint. Although they plead that Tu had a conversation with Boisvert's attorney, Plaintiffs fail to allege how Tu harmed Plaintiffs by receiving this information as counsel for Cantey and Carbon IQ in that case such that he personally could be held liable for securities fraud, fraud, aiding and abetting fraud, negligent misrepresentation, legal malpractice, or breach of fiduciary duty. The Court grants Defendants' Motion to Dismiss all claims against Mayhugh and Tu.

### B. SECURITIES FRAUD

Plaintiffs seek to prove their securities-fraud claim (Count I) by relying on Defendants' nondisclosure, rather than on overt misstatements. (Compl. ¶¶ 58–60.) Defendants argue that Plaintiffs have failed to adequately plead a securities-fraud claim because they do not allege any interactions between Plaintiffs and Defendants before Plaintiffs' July 18, 2022 investment in Carbon IQ. (Defs. Br. at 13–15.) To allege a securities-fraud claim for a violation of § 10(b) and Rule 10b-5, a plaintiff must establish "six elements: (i) a misrepresentation or omission of material

fact; (ii) scienter; (iii) a connection with the purchase or sale of a security; (iv) reliance; (v) economic loss; and (vi) loss causation." *In re Celgene Corp., Inc. Sec. Litig.*, 747 F. Supp. 3d 748, 756 (D.N.J. 2024) (quoting *City of Warren Police & Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 679 (3d Cir. 2023)).

Because Plaintiffs must show "a connection with the purchase or sale of a security"[6] to prove their securities-fraud claim, the only events relevant to that claim are those leading up to Plaintiffs' $140,000 investment in Carbon IQ. *See In re Celgene Corp., Inc.*, 747 F. Supp. 3d at 756. Plaintiffs do not allege any facts to support how Gould's acceptance of the Board position is connected to the purchase or sale of a security. Their securities fraud claim is, therefore, dismissed on that basis.

To satisfy the first element of securities fraud, a plaintiff must "identify a false representation of material fact or omission that makes a disclosed statement materially misleading." *In re NAHC Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002) (citing *In re Burlington*

---

[6] "[T]he term 'security' was meant to include 'the many types of instruments that in our commercial world fall within the ordinary concept of a security,' . . . the scope of federal securities laws is not without limitation, and Congress did not intend to create a federal cause of action for common fraud." *Gordon v. Dailey*, No. 14-7495, 2018 WL 1509080, at *5 (D.N.J. Mar. 27, 2018) (quoting *Goodwin v. Elkins & Co.*, 730 F.2d 99, 102 (3d Cir. 1984)). Under The Exchange Act, a "security" is defined as:

> any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited.

15 U.S.C. § 78c (a)(10) (emphasis added).

*Coat Factory*, 114 F.3d at 1419). A statement or omission of fact is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988) (citation omitted); *see also In re Newell Brands*, 837 F. App'x at 874 (statements or omissions viewed "in light of all the information then available to the market").

Further, a statement or omission only gives rise to liability if it was "misleading at the time it was made; liability cannot be imposed on the basis of subsequent events." *In re NAHC*, 306 F.3d at 1330 (citation omitted). Under the PSLRA's heightened pleading standards, "[a] complaint involving securities fraud must specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief . . . all facts on which that belief is formed." *In re Newell Brands*, 837 F. App'x at 874 (internal quotation marks omitted).

While omissions may lead to liability, "Section 10(b) and Rule 10b-5 'do not create an affirmative duty to disclose any and all material information." *In re Cognizant Tech. Sols. Corp. Sec. Litig.*, No. 16-6509, 2018 WL 3772675, at *15 (D.N.J. Aug. 8, 2018) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). "Disclosure is required only when necessary to make statements made, in the light of the circumstances under which they were made, not misleading." *Id.* (cleaned up). "A duty to disclose under Rule 10b-5 may arise in three circumstances: 'when there is insider trading, a statute requiring disclosure, or an inaccurate, incomplete or misleading prior disclosure.'" *Industriens Pensionsforsikring A/S v. Becton, Dickinson & Co.*, 620 F. Supp. 3d 167, 186 (D.N.J. 2022) (quoting *Oran v. Stafford*, 226 F.3d 275, 285–286 (3d Cir. 2000)). If a defendant "makes an affirmative statement or characterization about

15

its business, it puts that subject 'in play' and assumes a duty, under the securities laws, to speak truthfully about that subject." *In re Merck & Co., Inc. Sec., Derivative, & "ERISA" Litig.*, No. 05-1151, 2011 WL 3444199, at *9 (D.N.J. Aug. 8, 2011) (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 282 (3d Cir. 1992)). "Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 174 (3d Cir. 2014) (internal quotation marks omitted).

Liability for securities fraud is not limited "solely to architects or masterminds of a scheme to defraud." *In re Able Lab'ys Sec. Litig.*, No. 05-2681, 2008 WL 1967509, at *21 (D.N.J. Mar. 24, 2008). A secondary actor, "including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming all of the requirements for primary liability under Rule 10b-5 are met." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994). However, federal Circuit Courts of Appeals have held that "a lawyer or law firm cannot be held liable for misrepresentation under section 10(b) for failing to disclose information about a client to a third party absent some fiduciary or other confidential relationship with the third party." *Schatz v. Rosenberg*, 943 F.2d 485, 490 (4th Cir. 1991); *In Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir. 1986) (finding that lawyers have no duty to disclose information about clients to third party purchasers or investors in the absence of a confidential relationship between the attorney and the third party). "Neither lawyers nor accountants are required to tattle on their clients in the absence of some duty to disclose. To the contrary, attorneys have privileges not to disclose." *In Barker*, 797 F.2d at 497.

Here, Plaintiffs allege very little regarding the relationship between Plaintiffs and Defendants prior to Plaintiffs' July 2022 investment. They assert that, while Defendants were representing Carbon IQ and Cantey in the *Boisvert* case, Defendants were "continuing to assist Carbon IQ and Cantey with obtaining additional investor financing, including from Plaintiffs, as well as other investors." (Compl. ¶ 22.) Plaintiffs also allege that Defendants knew Gould Ventures was a Carbon IQ shareholder and investor and that Plaintiffs were considering an additional monetary investment in Carbon IQ. (*Id.* ¶¶ 13, 20.) Plaintiffs' relationship with Defendants prior to Plaintiffs' $140,000 investment in Carbon IQ rests solely on these alleged facts. The Court finds these facts insufficient to allege Defendants' duty to disclose the fraud allegations, including Texas's securities investigation, prior to Plaintiffs' July 2022 investment in Carbon IQ under the pleading standards of Rule 9(b) and the PSLRA.

Plaintiffs argue in connection with other claims (legal malpractice and breach of fiduciary duty) that Defendants owed a duty to them as third parties because Defendants intended or should have foreseen that Plaintiffs would rely on their statements and that the parties shared a "special relationship." (Pls. Br. at 29–30.) The Court disagrees that any such relationship existed between the parties prior to the July 2022 investment. Under New Jersey law, there are three categories of special relationships that give rise to a duty to disclose: "(1) fiduciary relationships, such as principal and agent, client and attorney, or beneficiary and trustee"; (2) "relationships where one party expressly reposits trust in another party, or else from the circumstances, such trust necessarily is implied"; and (3) "relationships involving transactions so intrinsically fiduciary that a degree of trust and confidence is required to protect the parties." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1185 (3d Cir. 1993). "The nature of the transaction is not the test" in the second category. *Berman v. Gurwicz*, 458 A.2d 1311, 1314 (N.J. Super. Ct. Ch. Div. 1981). "Each case must depend

on its own circumstances." *Id.* "The trust and confidence . . . may expressly appear by the very language of the parties, or they may be necessarily implied from their acts and other circumstances." *Id.* The third category applies if "the very contract or other transaction itself, in its essential nature, is intrinsically fiduciary, and necessarily calls for perfect good faith and full disclosure, without regard to any particular intention of the parties." *Id.* Apart from the first category, Plaintiffs do not argue or otherwise point to facts in support of a special relationship based on any other category. The Court declines to make any such argument for them.

Under the first category, Plaintiffs contend that an attorney-client relationship existed between Plaintiffs and Defendants because Plaintiffs relied on Defendants' confirmation of D&O insurance. (*Id.* at 29.) That statement occurred in August 2022, after Plaintiffs invested $140,000 in Carbon IQ. (Compl. ¶ 26.) Plaintiffs make no mention of their reliance on any statements made by Defendants prior to their July 2022 investment. Even if Defendants knew that Gould Ventures was a shareholder and looking to invest in Carbon IQ and Defendant was assisting Carbon IQ and Cantey in those efforts, Plaintiffs cite no case establishing an attorney-client relationship in such circumstances. Indeed, Plaintiffs were represented by their own attorney, Zachary Shapiro, during their dealings with Defendants. (D&O Email Chain at 1–2.) Plaintiffs have failed to sufficiently allege an attorney-client relationship between the parties in connection with their July 2022 investment. *See infra* Section III.E (finding that Plaintiffs have failed to plead an attorney-client relationship between Plaintiffs and Defendants sufficient to establish a legal malpractice claim).

Moreover, Plaintiffs' reliance on the Sixth Circuit's holding in *Rubin v. Schottenstein, Zox & Dunn* is inapposite as that case does not support finding a special relationship in the context of Plaintiffs' investment. 143 F.3d 263 (6th Cir. 1998). In *Rubin*, the court held that, "while an attorney representing the seller in a securities transaction may not always be under an independent

duty to volunteer information about the financial condition of his client, he assumes a duty to provide complete and nonmisleading information with respect to subjects on which he undertakes to speak." *Id.* at 268. The Sixth Circuit based its holding on the fact that the attorney for the corporation had "direct contacts" with the plaintiffs, speaking to the plaintiffs "at length" about details material to their proposed investment. *Id.* at 267. By contrast, the Complaint here is devoid of allegations regarding direct contact between any Defendant and Plaintiffs before the July 2022 investment. Plaintiffs' allegation that Defendants "continu[ed] to assist Carbon IQ and Cantey with obtaining additional investor financing," (Compl. ¶ 22), does not adequately establish under the heightened pleading standards of Rule 9(b) and the PSLRA that Defendants spoke directly to Plaintiffs or their attorney prior to the July 2022 investment. In other words, this Court cannot assess the nature or completeness of statements made by Defendants to Plaintiffs prior to Plaintiffs' investment because the Complaint contains none.[7] Without an allegation that Defendants had direct contact with Plaintiffs regarding their proposed investment, Defendants owed Plaintiffs no duty to disclose information regarding the *Boisvert* case prior to Plaintiffs' July 2022 investment. Plaintiffs rely on no other law or facts to support their special relationship argument. Accordingly, Defendants Motion to Dismiss Plaintiffs' securities-fraud claim (Count I) is granted.[8]

---

[7] Plaintiffs argue solely in their opposition brief that "Defendants Hallinan and Wang encouraged and lured Plaintiffs into making a further investment in a company headed by a known fraudster." (Pls. Br. at 21.) There is no such fact asserted in the Complaint. Thus, the Court cannot consider it. *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (internal quotation marks omitted)). In addition, this vague reference to Hallinan and Wang's conduct lacks Rule 9(b)'s requisite specificity as to the who, what, where, when, and how of Defendants' alleged fraud. *See Weske*, 42 F. Supp. 3d at 614.

[8] Defendants also argue that they were not required to disclose the allegations in the *Boisvert* litigation at any point because it was publicly available on the federal docket for the case. Defendants rely on the Second Circuit's definition of public information—information that is "readily available, broadly disseminated, or the like." *United States v. Royer*, 549 F.3d 886, 897 (2d Cir. 2008). However, unlike here, that definition arose in the context of a conviction for insider trading. *Id.* Furthermore, the Third Circuit has not recognized

### C.    COMMON LAW FRAUD AND NEGLIGENT MISREPRESENTATION

The Court will address the sufficiency of Plaintiffs' common law fraud (Count II) and negligent misrepresentation (Count IV) claims together as there is significant overlap between their elements. "To establish fraud under New Jersey law, a plaintiff must prove that 'the defendant made (1) a material misrepresentation of present or past fact (2) with knowledge of its falsity (3) with the intention that the other party rely thereon (4) and which resulted in reasonable reliance by plaintiff.'" *Read v. Profeta*, 397 F. Supp. 3d 597, 635 (D.N.J. 2019) (quoting *Lightning Lube*, 4 F.3d at 1182; *see also Allstate New Jersey Ins. Co. v. Lajara*, 117 A.3d 1221, 1231 (N.J. 2015) (quoting *Banco Popular N. Am. v. Gandi*, 876 A.2d 253 (N.J. 2005)). To state a claim for negligent misrepresentation, a plaintiff must show "(1) an incorrect statement, (2) negligently made, (3) upon which plaintiff justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance." *Noble v. Samsung Elecs. Am., Inc.*, No. 15-3713, 2018 WL 801590, at *5 (D.N.J. Feb. 8, 2018); *see also Green v. Morgan Props.*, 73 A.3d 478, 493 (N.J. 2013). For negligent misrepresentation claims[9] brought in New Jersey, as with any tort claim, a plaintiff must prove that

---

such a definition of public information. Although the Court need not reach this question based on the claims that survive dismissal, the Court recognizes that the fraud allegations in the *Boisvert* litigation were publicly filed on the docket. Plaintiffs, who were shareholders and investors in Carbon IQ and considering additional investments and a Board position, were represented by their own attorney who could have accessed these public filings regarding the company in which they were considering becoming further involved. However, Plaintiffs allege that there was a private conversation between Boisvert's attorney and Defendant Tu regarding Cantey's fraud. (Compl. ¶ 18.) The Court notes that the substance of that conversation and what was revealed to Tu are not publicly available.

[9] Plaintiffs' negligent misrepresentation claim is alleged as a separate claim (Count IV). Therefore, "it is not subject to Rule 9(b)'s heightened pleading requirements, notwithstanding the significant overlap in allegations between the claims." *Donachy v. Intrawest U.S. Holdings, Inc.*, No. 10-4038, 2012 WL 869007, at *5 (D.N.J. Mar. 14, 2012) (citing *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 268 (3d Cir. 2006) ("[T]he reputational concerns that animate Rule 9(b) with respect to a defendant accused of fraud are not implicated when a defendant stands accused of nothing more than negligence.").

"the putative tortfeasor breached a duty of care owed to plaintiff." *Highlands Ins. Co. v. Hobbs Grp., LLC*, 373 F.3d 347, 351 (3d Cir. 2004).

### 1.    Omission

Plaintiffs' fraud and negligent misrepresentation claims are based, in part, on Defendants' failure to disclose material information. (Compl. ¶¶ 62–66, 71–78.) The Court will analyze the actionability of these alleged omissions first. Regarding fraud, Defendants argue that, absent a statement rendered misleading by their failure to disclose the details of the *Boisvert* allegations to Plaintiffs, they owed Plaintiffs no independent duty. (Defs. Br. at 29.) Similarly, Defendants argue in connection with Plaintiffs' negligent misrepresentation claim (Count IV) that they did not owe Plaintiffs a duty of care because Plaintiffs have failed to allege a fiduciary relationship between the parties. (*Id.* at 38.)

Turning first to Plaintiffs' fraud claim, when fraud is based on "silence or concealment," "New Jersey courts will not imply a duty to disclose, unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube, Inc.*, 4 F.3d at 1185. "[S]pecific ambiguous partial disclosures or statements may impose a duty to disclose." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 234 (D.N.J. 2020) (internal quotation marks omitted); *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *20 (D.N.J. May 8, 2017) ("New Jersey law imposes a duty to disclose when a defendant has made a partial disclosure."). "Business negotiations may fall into the 'make a previous statement true' category where one party makes disclosures on a subject during negotiations on which the other may reasonably rely or is affirmatively misled. *Absorption Pharms., LLC v. Reckitt Benckiser LLC*, No. 17-12872, 2020 WL 10139487, at *6 (D.N.J. June 25, 2020) (internal quotation marks omitted); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20 (finding that, because the defendant allegedly made partial disclosures

on a specific subject, "it had a duty to fully disclose any and all information regarding [that subject] to Plaintiffs under New Jersey law").

Here, Plaintiffs' fraud by omission claims rest on several grounds: (1) Plaintiffs failure to disclose the *Boisvert* fraud allegations before Plaintiffs' July 2022 investment in Carbon IQ; (2) Plaintiffs failure to disclose the *Boisvert* fraud allegations before Gould accepted the Board position; and (3) Plaintiffs' failure to disclose the *Boisvert* fraud allegations in the Case Description for Investors prepared by Defendants. For the reasons discussed in Section III.C, Plaintiffs have failed to adequately allege a duty to disclose the *Boisvert* allegations before Plaintiffs' July 2022 investment in Carbon IQ. Therefore, the Court dismisses Plaintiffs' fraud claim (Count II) to the extent that it is based on that investment.

Plaintiffs also base their fraud claim on Defendants' failure to disclose the *Boisvert* fraud allegations before Gould accepted the Board seat. As with Plaintiffs' July 2022 investment, Plaintiffs fail to allege any statement made regarding the *Boisvert* litigation or on any subject related to that litigation that any Defendant made to Plaintiffs before Gould accepted the Board position. Without such a statement, the Court cannot assess whether Defendants had a duty to disclose to Plaintiffs the *Boisvert* fraud allegations to "make a previous statement true." *Lightning Lube, Inc.*, 4 F.3d at 1185. Additionally, Plaintiffs were in the same relationship with Defendants before Gould accepted the Board seat as they were at the time of the July 2022 investment. Gould Ventures was a shareholder and investor in Carbon IQ, and Gould was represented by his own attorney in the Board seat discussions. Thus, for the same reasons discussed in Section III.C, the Court finds no special relationship between Plaintiffs and Defendants requiring Defendants to disclose the *Boisvert* allegations before Gould became a Board member.

Plaintiffs, however, do allege that a Case Description for Investors prepared by Defendants in August 2022 included statements regarding the *Boisvert* litigation. (Compl. ¶¶ 39–40.) That description does not include information regarding Boisvert's fraud allegations against Cantey or the Texas securities investigation. (*See* Case Description for Investors at 1.) Because Defendants disclosed information regarding the *Boisvert* case in this document, they were obligated to "fully" disclose "any and all information" regarding that litigation. *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160, at *20. However, for the reasons discussed below in Section III.D.4, this aspect of Plaintiffs' fraud claim fails because they had not adequately plead Plaintiffs' reliance on this statement before either investing in Carbon IQ or before Gould accepted the director position. Thus, the Court dismisses Plaintiffs' fraud claim (Count II) to the extent that it arises from the Case Description for Investors or Defendants' failure to disclose the *Boisvert* allegations before Gould accepted the Board position.

Regarding negligent misrepresentation, Plaintiffs state that this claim "plainly rests on Defendant Wang and Hallinan's express (and repeated) misrepresentation that D&O insurance existed." (Pls. Br. at 28–29.) Based on this representation regarding the scope of their negligent misrepresentation claim, the Court dismisses that claim (Count IV) to the extent that it arises from Defendants' failure to disclose the *Boisvert* allegations before Plaintiffs' investment in Carbon IQ and before Gould accepted the Board seat as well as the Case Description for Investors. In all, no claims rooted in an omission or a duty to disclose survive dismissal.

### 2.    Misrepresentation

Plaintiffs also rest their fraud and negligent misrepresentation claims on Defendants' misleading statements regarding D&O insurance. (Compl. ¶¶ 63, 73.) Defendants argue that Defendant Wang did not mislead Gould regarding the existence of a D&O policy because Gould's lawyer sought evidence of the D&O policy and acknowledged that Wang did not possess evidence

of it. (Defs. Br. at 24–26.) A misrepresentation is a "materially false or misleading" assertion of fact. Misrepresentation, Black's Law Dictionary (12th ed. 2024). "[A] fact is material when, if the representation had not been made, the contract or transaction would not have been entered into." *Maddaluna v. DTD Enters., Inc.*, No. A-0831-06T5, 2007 WL 1518289, at *3 (N.J. Super. Ct. App. Div. May 25, 2007) (internal quotation marks omitted) (citing *Massachusetts Mut. Life Ins. Co. v. Manzo*, 560 A.2d 1215, 1231 (N.J. Super. Ct. App. Div. 1989), *rev'd on other grounds*, 584 A.2d 190 (1991).

Before reaching Defendants' arguments on the misrepresentation element, the Court must address Defendants' attempt to introduce nine additional emails between Defendants and Gould's attorney regarding Carbon IQ's D&O policy. (Defs. Br. at 25.) Defendants argue that the Court can consider these additional emails at the motion to dismiss stage. The Court disagrees. First, unlike Defendants' contention, this is not a circumstance in which Plaintiffs have selectively quoted from a document or submitted excerpted passages. Plaintiffs have attached to the Complaint the complete email chain forwarded to Gould on August 20, 2022 between Wang and Plaintiffs' attorney, in which Wang confirms that Carbon IQ has D&O insurance. (D&O Email Chain at 1–2.) At this stage, the Court declines to consider the other emails outside of this chain as they are beyond the Complaint and its exhibits. *See Marjac, LLC v. Trenk*, No. 06-1440, 2006 WL 3751395, at *12 (D.N.J. 2006) ("In considering a motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), this Court is limited to a consideration of the contents of the Complaint.").

Even if it did, the additional emails would not alter the Court's finding that Plaintiffs' have adequately pled a material misrepresentation regarding the D&O policy. In the initial email on August 16, 2022, Gould's attorney asks Wang to confirm that Carbon IQ has D&O insurance to

cover Gould as a director. (D&O Email Chain at 2.) Wang responds, "Confirmed on the insurance." (*Id.* at 1.) In the additional emails that Defendants seek to introduce, Gould's attorney follows up with Wang about several items "just . . . to make sure," including "D&O insurance info." (ECF No. 27-2 at 74.) Wang reiterates, "We confirmed the health insurance and D&O insurance were done." (*Id.* at 72.) Wang offers to provide evidence of the policy, which Gould's attorney accepts. (*Id.*) However, Plaintiffs allege that Defendants "never actually received any evidence confirming the existence of such insurance." (Compl. ¶ 32.) Plaintiffs assert that Gould accepted the Board position in reliance on Wang's email confirmation of D&O insurance. (*Id.* ¶ 35.) In addition, Plaintiffs allege that had Defendants not misled them and had they known that Carbon IQ did not have D&O insurance, Gould would not have accepted the Board position. (*Id.* ¶ 37.) Based on these allegations, coupled with the email communications attached to the Complaint, the Court finds that Plaintiffs have sufficiently pled that Wang's confirmation of D&O insurance was false, as Carbon IQ did not actually have D&O insurance in place at the time. (*Id.* ¶¶ 33, 37.) Plaintiffs have also adequately pled that this allegedly false statement was material because Plaintiffs assert that Gould would not have accepted the Board position if Defendants had not falsely claimed that D&O insurance existed. (*Id.* ¶ 31.) Accordingly, on this ground, Plaintiffs have satisfied the material misrepresentation element of fraud and negligent misrepresentation under Rules 9(b) and 12(b)(6).[10]

---

[10] Plaintiffs have also adequately alleged the duty of care element of their negligent misrepresentation claim. Plaintiffs point to the Supreme Court of New Jersey's decision in *Petrillo v. Bachenberg* in which the court found that an attorney representing the seller in a real estate transaction owed a duty to the buyer for purposes of a negligent misrepresentation claim because the attorney should have known that the buyer would rely on his "percolation-test report" in deciding to buy the property. 655 A.2d 1354, 1355, 1360 (N.J. 1995). Based on the New Jersey Supreme Court's reasoning, the Court finds that Plaintiffs have sufficiently pled that Wang owed Gould a general duty of care. (*See* Compl. ¶¶ 28, 31, 32, 63, 64); *see also infra* Section III.D.3.

     3.    <u>Knowledge</u>

As found previously herein, Plaintiffs' fraud and negligent misrepresentation claims survive on a limited basis.[11] Thus, the Court addresses the state of mind element of both claims only as to the statements made regarding D&O insurance. Defendants argue that the Complaint is "silent on what Ms. Wang knew or should have known about D&O insurance as of August 19, 2022, when she sent her initial email." (Defs. Br. at 31.) To prove common law fraud, Plaintiffs must plead with particularity that, at the time of Wang's confirmation of D&O insurance, Wang knew that it was false. To adequately plead this scienter element, Plaintiffs must allege facts "giving rise to a strong inference of either reckless or conscious behavior." *Caspersen as Tr. for Samuel M.W. Caspersen Dynasty Tr. v. Oring*, 441 F. Supp. 3d 23, 39 (D.N.J. 2020) (quoting *Institutional Inv'rs Grp. v. Avaya Inc.*, 564 F.3d 242, 267–68 (3d Cir. 2009)). "Recklessness in this context is an 'extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" *Id.* The "strong inference" necessary to plead scienter "need not be irrefutable, *i.e.*, of the 'smoking gun' genre, or even the most plausible of competing inferences." *Id.* "The pertinent question is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.*

Here, Plaintiffs allege that Defendants confirmed the existence of D&O insurance, "despite knowing Cooley Defendants had no such evidence that such insurance existed, which, in fact, did not exist." (Compl. ¶ 63.) They assert that Defendants knew that Gould's acceptance of the Board

---

[11] For the reasons discussed below in Section III.D.4, Plaintiffs' have not adequately pled Plaintiffs' reliance on the Case Description for Investors; thus, their fraud and negligent misrepresentation claims fail on this ground.

position was contingent upon the existence of "adequate D&O insurance" but they failed to disclose to Plaintiffs that Defendants "never actually had any evidence confirming the existence of such insurance." (*Id.* ¶¶ 32, 64.) Plaintiffs claim that Defendants also knew at the time of Cantey's fraudulent activities in the *Boisvert* case, including the alleged forging of documents, and the Texas securities investigation. (*Id.* ¶¶ 28, 63.)[12] Additionally, Plaintiffs allege that Defendants were aware that Gould sought "financial records of Carbon IQ that would expose fraudulent activity of Cantey" and "failed to produce these documents until Mr. Gould accepted a position on the Board of Carbon IQ." (*Id.* ¶ 31.) Plaintiffs' allegations present a close call. However, at this early stage, the Court finds that, collectively, these allegations sufficiently plead the knowledge element of fraud based, at least, on a reckless state of mind. Wang's express and unequivocal confirmation that D&O insurance existed in response to Gould's probe without concrete evidence of its existence gives rise to a strong inference under Rule 9(b)[13] that Wang knew that her confirmation would present a danger of misleading Gould.

Because the Court finds that Plaintiffs have adequately alleged that Wang made the statement about D&O insurance at least recklessly, it follows that this statement was also made negligently as recklessness requires a more culpable state of mind than ordinary negligence. *See Luna v. Weiner*, No. 05-2298, 2006 WL 2570837, at *5 (D.N.J. Sept. 5, 2006). Thus, Plaintiffs have sufficiently pled the "negligently made" element of negligent misrepresentation.

---

[12] As previously discussed in Section III.A (Plaintiffs' group pleading), Plaintiffs' allegations concerning knowledge paint with a broad brush. Notably absent from the Complaint is an assertion of who at Cooley knew of the fraud allegations in the *Boisvert* case. The Court, however, will provide Plaintiffs an opportunity to cure these deficiencies, if they are able to be cured.

[13] "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

4.    <u>Reliance</u>

Consistent with the Court's analysis in Sections III.D.1 through III.D.3, the Court will address the reliance element of fraud and negligent misrepresentation based only on the Case Description for Investors and Wang's statement about D&O insurance. A party reasonably relies on a misrepresentation "when facts to the contrary were not obvious or did not provide a warning making it patently unreasonable" that plaintiff failed to pursue further investigation which would have revealed "the falsity of the representation" had plaintiff pursued it. *Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 460 A.2d 161, 165 (N.J. Super. Ct. App. Div. 1983), *rev'd on other grounds*, 477 A.2d 1224 (1984); *see also Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 305–06 (D.N.J. 2009). According to general decisional law, that reliance must have been justifiable, for example, As the Third Circuit has reasoned, "a sophisticated investor is not barred by reliance upon the honesty of those with whom he deals in the absence of knowledge that the trust is misplaced." *EP Medsystems, Inc. v. EchoCath, Inc.*, 235 F.3d 865, 883 (3d Cir. 2000) (quoting *Straub v. Vaisman & Co., Inc.*, 540 F.2d 591, 598 (3d Cir. 1976)). Moreover, the question of whether a plaintiff's "investigation and reliance was reasonable presents a factual issue that is more properly left to the judgment of the jury." *Angrisani v. Cap. Access Network, Inc.*, 175 F. App'x 554, 557 (3d Cir. 2006); *Oring*, 441 F. Supp. 3d at 41 ("[R]easonableness is a factual issue, to be determined on a case-by-case basis and cannot easily serve as the foundation of a motion to dismiss."); *see also Angrisani*, 175 F. App'x at 557 ("[I]ssues of reliance and its reasonableness, going as they do to subjective states of mind and applications of objective standards of reasonableness, are preeminently factual issues for the trier of fact." (citation omitted)).

Regarding the Case Description for Investors, Plaintiffs allege that Defendants failed to include in that description information regarding Boisvert's fraud allegations against Cantey or the Texas securities investigation. (Compl. ¶ 40; Case Description for Investors at 1.) However, there

is no allegation in the Complaint that Plaintiffs saw or were even aware of this description before investing in Carbon IQ in July 2022 or before Gould accepted the director position and were, therefore, misled by it. *See Absorption Pharms., LLC*, 2020 WL 10139487, at *6. Without such an allegation, Plaintiffs could not have acted in reliance on the Case Description for Investors. Therefore, they have failed to sufficiently plead that element of both fraud and negligent misrepresentation.

Regarding Wang's D&O insurance confirmation, Defendant argues that Gould never relied on Wang's statement because he "requested evidence of the D&O policy" and "acknowledged that Ms. Wang did not possess such evidence." (Defs. Br. at 33.) As an initial matter, the Court disagrees with Defendants' characterization of the email communications that they seek to introduce outside of the pleadings. Wang offered evidence of the D&O policy, which Gould's attorney accepted. (ECF No. 27-2 at 72.) In addition, there was no express acknowledgement by Plaintiffs in those emails that Wang did not possess evidence of the D&O policy or an express statement from Wang herself that she had never seen evidence of the policy. (*See id.* at 68–74.)

Here, Plaintiffs allege that Gould relied on Wang's confirmation of the existence of D&O insurance in accepting the director position. (Compl. ¶ 35.) Plaintiffs assert that Defendants did not disclose to them that Defendants "never" had evidence confirming the existence of the policy before Gould accepted the Board position. (*Id.* ¶ 32.) Plaintiffs allege that Gould would not have accepted that position if he had known that the D&O insurance did not exist. (*Id.* ¶ 37.) Based on the allegations currently before this Court, the Court determines that Plaintiffs have adequately pled reliance. Indeed, the Court will not second-guess at this stage whether Plaintiffs' reliance on Wang's honesty was reasonable or whether it was reasonable for Gould to accept the Board seat without evidence that the D&O policy existed. In other words, whether Plaintiffs' due diligence

was appropriate is a "fact-dependent" question "ill-suited to resolution on a motion to dismiss." *Oring*, 441 F. Supp. 3d at 41. Accordingly, the Court finds that Plaintiffs have sufficiently pled the reliance element of fraud under Rule 9(b) and negligent misrepresentation under Rule 12(b)(6) regarding the D&O statement.

### 5.    Proximate Cause

Defendants argue that there are undisputed facts present here that establish as a matter of law that an intervening cause precludes proximate cause. (Defs. Br. at 34.) Defendants contend that they had no role in Refinery Management's "investigation or ultimate decision to file a lawsuit" against Gould, and, therefore, Defendants did not proximately cause Refinery Management to file that lawsuit. (*Id.* at 35–36.) Proximate cause is "a cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the result complained of and without which the result would not have occurred." *Bond v. Solvay Specialty Polymers, USA, LLC*, 583 F. Supp. 3d 643, 650 (D.N.J. 2022) (internal quotation marks omitted). To establish proximate cause, a plaintiff must show that the "negligence was a 'substantial factor' contributing to the result." *Id.* (citing *Komlodi v. Picciano*, 89 A.3d 1234, 1255 (N.J. 2014) ("[T]he 'substantial factor' test is given when there are concurrent causes potentially capable of producing the harm or injury.")). Under New Jersey law, "[a] substantial factor is one that is not a remote, trivial or inconsequential cause." *Id.* "Ordinarily, issues of proximate cause are considered to be jury questions." *Severa v. Solvay Specialty Polymers USA, LLC*, 524 F. Supp. 3d 381, 391 (D.N.J. 2021).

Plaintiffs allege that Wang's misrepresentation regarding D&O insurance induced Gould to become a Board member, which, in turn, was the "direct and proximate cause" of Plaintiffs' "legal expenses, liability exposure in the Refinery Litigation, and related consequential damages." (Compl. ¶¶ 35, 41, 66.) Whether Wang's misrepresentation was a substantial factor contributing

to this alleged harm is a fact-intensive question that this Court cannot answer without discovery. Thus, the Court finds that Plaintiffs have sufficiently pled proximate cause as to both fraud and negligent misrepresentation to survive dismissal at this early stage.

### D.    AIDING AND ABETTING FRAUD

Although Defendants move to dismiss Plaintiffs' aiding and abetting fraud claim, they give the claim short shrift in their brief, arguing that Plaintiffs fail to adequately plead that Defendants were aware of and substantially participated in Cantey's fraud. (Defs. Br. at 39.) To establish liability for aiding and abetting fraud,[14] a plaintiff must prove (1) "the underlying wrongdoing (*i.e.*, the fraud committed by another party)"; (2) "knowledge of the underlying wrongdoing";[15] and (3) "the aider-abettor knowingly and substantially participated in the underlying wrongdoing." *DeFazio v. Wells Fargo Bank Nat'l Ass'n*, No. 20-375, 2020 WL 1888252, at *5 (D.N.J. Apr. 16, 2020); *see also Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 415 (3d Cir. 2003).

Here, the Court finds that Plaintiffs' aiding and abetting fraud claim fails at the second element. Plaintiffs must plead with particularity Defendants' knowledge of the fraud committed, *i.e.*, that Defendants knew that Cantey was concealing his prior fraud regarding Boisvert and his

---

[14] Aiding and abetting fraud is subject to Rule 9(b)'s heightened pleading standards because it is a "fraud-derivative" claim. *Am. Gen. Life Ins. Co. v. Altman Fam. Ins. Tr. ex rel. Altman*, No. 08-399, 2009 WL 5214027, at *4 (D.N.J. Dec. 22, 2009).

[15] Unlike common law fraud, New Jersey courts have not explicitly permitted a plaintiff to prove aiding and abetting fraud by showing recklessness. However, in a different context, the New Jersey Supreme Court has held that "the words aiding and abetting require active and purposeful conduct." *Cicchetti v. Morris Cnty. Sheriff's Off.*, 947 A.2d 626, 645 (N.J. 2008) (internal quotation marks omitted); *see also Wiatt v. Winston & Strawn LLP*, 838 F. Supp. 2d 296, 307 (D.N.J. 2012) ("A plaintiff must establish a strong inference that the alleged aider and abettor had 'actual knowledge' of the breach under New York law, and because both New York and New Jersey law require that a defendant 'knowingly' aid and abet a breach of fiduciary duty, the Court does not find a true conflict between the two state law requirements.") Without a clear statement under New Jersey law, this Court will not read a recklessness state of mind into the knowledge element of aiding and abetting.

former company Plot from Plaintiffs and that Wang knew that Carbon IQ did not have D&O insurance. Plaintiffs allege in a conclusory fashion throughout the Complaint that Cantey engaged in fraudulent conduct of which Defendants were aware. In addition, in their brief, Plaintiffs argue that "the Cooley law firm confronted Cantey regarding the[] [Boisvert] allegations" and that "Cooley was aware of the validity of [the] accusations" against Cantey. (Pls. Br. at 24.) There are no such allegations in the Complaint. Plaintiffs allege, instead, that Boisvert's attorney called Defendant Tu about Cantey's fraudulent conduct in connection with Boisvert and Cantey's former company, Plot. (Compl. ¶ 18.) Thereafter, Boisvert's attorney filed a motion to remand, attaching declarations detailing Cantey's conduct. (*Id.* ¶ 19.) As far as this Court is aware from what the parties have provided it, Boisvert's allegations of fraud against Cantey have not yet been proven either civilly or criminally and the Texas securities investigation remains ongoing. Missing from the Complaint are facts to support otherwise. Indeed, Plaintiffs have not alleged that Defendants knew, either from speaking directly to Cantey or through some other investigation, that Cantey had committed fraud and was concealing that fraud from Plaintiffs. Furthermore, as the Court has already held in Sections III.C and III.D.1, Defendants had no duty to disclose the *Boisvert* allegations to Plaintiffs. Indeed, as Carbon IQ and Cantey's attorneys, Defendants were not required to "tattle" on their clients absent a confidential relationship between Defendants and Plaintiffs. *See In Barker*, 797 F.2d at 497. As the Court determined in Section III.C and Section III.E, Plaintiffs have failed to demonstrate the existence of such a relationship.

Regarding Wang's D&O insurance statement, Plaintiffs allege that Defendants confirmed the existence of D&O insurance, "despite knowing Cooley Defendants had no such evidence that such insurance existed." (Compl. ¶ 63.) Plaintiffs go further, asserting that Defendants "never actually had any evidence confirming the existence of such insurance" and failed to disclose it to

Plaintiffs. (*Id.* ¶¶ 32, 64.) Although Plaintiffs allege that Defendants knew that *Defendants* did not have evidence of the D&O policy, what Plaintiffs do not allege—and what they need to allege to prove aiding and abetting—is that Defendants knew that *Carbon IQ* did not have D&O insurance. Because the Complaint is devoid of any such allegation, the Court grants Defendants' Motion to Dismiss Plaintiffs' aiding and abetting fraud claim (Count III).

### E.    LEGAL MALPRACTICE

Defendants argue that Plaintiffs' legal malpractice claim fails because Plaintiffs were never Defendants' clients. (Defs. Br. at 37.) To prove legal malpractice, a plaintiff must show: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." *Portes v. Tan*, No. A-5686-14T4, 2017 WL 2536379, at *2 (N.J. Super. Ct. App. Div. June 12, 2017) (citing *McGrogan v. Till*, 771 A.2d 1187, 1193 (N.J. 2001)); *see also Gilbert v. Stewart*, 255 A.3d 1101, 1113 (N.J. 2021). "Under New Jersey law, 'an attorney-client relationship may be express or implied.'" *Blueprint Cap. Advisors, LLC v. New Jersey*, No. 20-7663, 2025 WL 1040380, at *6 (D.N.J. Apr. 8, 2025) (quoting *Speeney v. Rutgers*, 673 F. App'x 149, 153 (3d Cir. 2016)). An implied attorney-client relationship exists if "a person manifests to a lawyer the person's intent that the lawyer provide legal services to the person" and either (1) "the lawyer manifests to the person consent to do so" or (2) "the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." *Dixon Ticonderoga Co. v. Est. of O'Connor*, 248 F.3d 151, 169 (3d Cir. 2001). "[A]n implied attorney-client relationship must be based upon . . . an objectively reasonable belief that the relationship has been formed under the totality of the circumstances." *Blueprint Cap. Advisors, LLC*, 2025 WL 1040380, at *6 (internal quotation marks omitted).

33

The Court finds that Plaintiffs have failed to allege either an express or implied attorney-client relationship between Plaintiffs and Defendants. There are no facts in the record to support that Plaintiffs manifested to any Defendant an intent that Defendants provide legal services to Plaintiffs. In addition, Plaintiffs make no allegation to support that any Defendant knew or should have known that Plaintiffs reasonably relied on Defendants to provide him legal services in connection with his July 2022 investment or the Board-seat negotiation. Indeed, Plaintiffs were represented by their own attorney. (D&O Email Chain at 1–2.)

Plaintiffs cite a single case to support their legal malpractice claim. In that case, and as cited previously herein, the Supreme Court of New Jersey found that an attorney representing the seller in a real estate transaction owed a duty to the buyer because the attorney should have known that the buyer would rely on his "percolation-test report" in deciding to buy the property. *Petrillo*, 655 A.2d at 1355, 60. However, the claim before the court was negligent misrepresentation, not legal malpractice. *Id.* at 1357. There was no finding that the circumstances of that case created an attorney-client relationship. Indeed, the plaintiff was represented by her own attorney. Thus, the Court will not extend *Petrillo*'s holding to legal malpractice claims. Plaintiffs cite to no other case establishing that an attorney-client relationship existed between Plaintiffs and Defendants in this context. Therefore, the Court grants Defendants' Motion to Dismiss Plaintiffs' legal malpractice claim (Count VI).

## F.    BREACH OF FIDUCIARY DUTY

Defendants also assert that they did not owe Plaintiffs a fiduciary duty in an "arms-length transaction," especially where both parties were sophisticated and represented by counsel. (*Id.* at 38.) "Claims for breach of fiduciary duty require: 1) the existence of a fiduciary duty or relationship between the parties; 2) breach of that duty; and 3) resulting damages." *Read*, 397 F. Supp. 3d at 633. Under New Jersey law, "[t]he essence of a fiduciary relationship is that one party

places trust and confidence in another who is in a dominant or superior position." *Harry Kuskin 2008 Irrevocable Tr. by Dworkin v. PNC Fin. Grp., Inc.*, No. A-1937-21, 2023 WL 4693141, at *8 (N.J. Super. Ct. App. Div. July 24, 2023) (quoting *F.G. v. MacDonell*, 150 N.J. 550, 563 (1997)). "A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship." *Read*, 397 F. Supp. 3d at 633. New Jersey courts have found that that there is no fiduciary relationship in certain "arms-length transactions." *Cohen v. Subaru of Am., Inc.*, No. 20-08442, 2022 WL 721307, at *20 (D.N.J. Mar. 10, 2022); *see also id.* (collecting cases). "The dominant theme" of New Jersey's case law on this point is that "fiduciary relationships arise where one party has the power and opportunity to take advantage of the other, because of that other's susceptibility or vulnerability." *Read*, 397 F. Supp. 3d at 633. "Fiduciary relationships implied in law are premised upon the specific factual situation surrounding the transaction and the relationship of the parties." *United Jersey Bank v. Kensey*, 704 A.2d 38, 44 (N.J. Super. Ct. App. Div. 1997). Plaintiffs' allegations do not support that any Defendant was in a superior or dominant position such that Plaintiffs were susceptible or vulnerable to Defendants taking advantage of them in connection with the July 2022 investment or the Board-seat negotiation. Plaintiffs, again, were represented by their own attorney who sought information from Defendants on their behalf and presumably advised them both on whether to invest and whether to accept the Board position. Accordingly, the Court finds that no fiduciary relationship existed between Plaintiffs and any Defendant.[16] The Court grants Defendants' Motion to Dismiss Plaintiffs' breach of fiduciary duty claim (Count V).

---

[16] Although the Court finds that a fiduciary relationship does not exist in this context, Defendants may still be liable for fraud or negligent misrepresentation "based on the dealings of the parties." *See N. Penn Towns, LP v. Concert Golf Partners, LLC*, 554 F. Supp. 3d 665, 706 n.15 (E.D. Pa. 2021).

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion (ECF No. 27) is **GRANTED in part** and

**DENIED in part**.

An appropriate Order will accompany this Opinion.

Dated: May 23, 2025

ROBERT KIRSCH
UNITED STATES DISTRICT JUDGE