**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GOULD VENTURES, LLC, a Delaware Limited Liability ~~Corporation~~Company, and JASON GOULD, an individual,<br><br>Plaintiffs,<br>vs.<br><br>COOLEY LLP, a California Limited Liability Partnership, MATT HALLI~~M~~NAN, ESQ., an individual, ~~MICHAEL TU, ESQ., an individual, ALEXANDRA MAYHUGH, ESQ., an individual,~~and HAN WANG, ESQ., an individual, and DOES 1-20 inclusive,<br><br>Defendants. | CIVIL ACTION<br><br>Case Number: 3:24-cv-09485<br><br>**FILED ELECTRONICALLY**<br><br>AMENDED **COMPLAINT and JURY DEMAND** |

Plaintiffs, Gould Ventures, LLC and Jason Gould, by way of Amended Complaint against Defendants, say:

**THE PARTIES**

1. Plaintiff Gould Ventures, LLC ("~~GV~~Gould Ventures") is a Delaware limited liability ~~corporation~~company, with its principal place of business located in Toms River, New Jersey.

2. Plaintiff Jason Gould ("Gould"), a member of ~~GV~~Gould Ventures at all relevant times herein, is a resident and domiciliary of Toms River, New Jersey, and the sole member of Gould Ventures.

3. Defendant Cooley LLP ("Cooley") is a California limited liability partnership engaged in providing legal services throughout the country and globally, with ~~principal places of business~~offices throughout the United States, including, but not limited to, Boston, California,

Chicago, Miami, and New York.

4. Defendant Matt Hallinan ("Hallinan") ~~is a partner~~was at all relevant times an attorney at Cooley~~,~~ and upon information and belief is a resident of California licensed to practice law in California.

~~5.~~ Defendant ~~Michael Tu ("Tu") is a retired partner~~Han Wang ("Wang") was at ~~Cooley, and upon information and belief is a resident of California licensed to practice law in California.~~

~~6. Defendant Alexandra Mayhugh ("Mayhugh") is~~all relevant times an attorney at Cooley~~, and upon information and belief is a resident of California licensed to practice law in California.~~

~~7.~~5. ~~Defendant Han Wang ("Wang") is an attorney at Cooley,~~ and upon information and belief is a resident of California licensed to practice law in Pennsylvania.

~~8. Cooley, Hallinan, Tu, Mayhugh and Wang are at times collectively referred to herein as the "Cooley Defendants."~~

**VENUE AND JURISDICTION**

~~9.~~6. Venue and jurisdiction ~~is~~are proper in the federal district court pursuant to 28 U.S.C. 1332(a)(1) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

~~10.~~7. Venue and jurisdiction ~~further is~~are also proper ~~as there is original and federal question jurisdiction over the claims asserted herein pursuant to §~~under 15 U.S.C. §78aa (§27 of the Securities Exchange Act of 1934 ~~("Exchange Act") (specifically §10b)~~ and 28 U.S.C. §1331, as the Complaint asserts claims under §10(b) of the Exchange Act~~)~~ and ~~28 U.S.C. §1331, as well~~

asSEC Rule 10b-5. The Court also has supplemental jurisdiction over the state law claims as thepursuant to 28 U.S.C. §1367, as those claims asserted are part ofarise from the same case or controversy and arise out of a common nucleus of operative facts (28 U.S.C. §1367)..

11.8. Venue is proper in the District of New Jersey because the events giving rise to Plaintiffs' claims occurred in New Jersey where Plaintiffs were, at all relevant times, residing, receiving and relying upon Cooley Defendants'the misrepresentations and/or omissions of material facts by each of the named Defendants.

12.9. Personal jurisdiction is proper over Cooley Defendants is appropriateeach Defendant because defendant Cooley, aCooley and its attorneys purposefully directed communications, including misrepresentations and material omissions, to Plaintiffs in New Jersey. Plaintiffs received and relied upon these communications in New Jersey, where the resulting harm occurred. Cooley's national and global law firm, together with the individually named Cooley attorney defendants, havepresence and repeated contacts with Plaintiffs in New Jersey further establish sufficient minimum contacts with the State of New Jersey related to the conduct at issue in this matter.

**BACKGROUND**

**A. Plaintiffs' Involvement with Carbon IQ, Inc.**

13.10. Plaintiff GVGould Ventures was an early investor in a start-up company named Carbon IQ, Inc. ("Carbon IQ"), a Delaware corporation formed in 2019.

14.11. Benjamin Cantey ("Cantey") is thewas a founder and CEO of Carbon IQ and was the only Director of Carbon IQ through September 1, 2022.

**B. Cooley Defendants' Retained as Corporate Counsel and Jointly Defend Carbon IQ and Cantey in Boisvert Litigation.**

12. In or about March/On April 5, 2022, dDefendant Cooley was retained by Carbon IQ as corporate counsel. with Defendants Hallinan and Wang providing legal assistance to Carbon IQ on general corporate and investor financing matters.

13. Cooley invoices to Carbon IQ confirm that both Hallinan and Wang obtained investor and financing documents from Carbon IQ's prior counsel, reviewed and approved future Carbon IQ investor and financing documents and were actively engaged in assisting Carbon IQ and Cantey with obtaining additional investor financing for Carbon IQ from their retention through August 2022, including from Plaintiffs. (*See* Exhibit A - Cooley General Corporate Invoices; Exhibit B - Cooley 2022 SAFE Financing Invoices).

14. Defendants Hallinan and Wang (at times collectively referred to herein as "Defendants") knew that Gould Ventures was an investor in Carbon IQ and understood, as of March 2022, that Gould Ventures should have been a shareholder in Carbon IQ as a result of two investments in March 2022 totaling $100,000.00.

15. On March 22, 2022, Gould Ventures invested $90,000.00 in Carbon IQ, intending to participate in the Series Seed equity round and trigger the conversion of all of Gould Ventures' prior SAFEs.

16. Plaintiffs learned that Carbon IQ had miscalculated the share allocations in the March 2022 Series Seed round. Rather than correct the mistake by properly issuing shares, Cooley, Hallinan and Wang proposed in the summer of 2022 to grant warrants to Gould as part of his board compensation package.

17. Defendants' internal communications (obtained after Cantey resigned from Carbon IQ) reveal this proposal was motivated by Defendants and Cantey's shared concern that transparently disclosing allocation and corporate governance errors would alarm other investors

and hinder Carbon IQ's ability to raise its Series A round. (*See* Exhibit D - July 21, 2022 Cooley-Cantey email chain with July 12th email located on p. 6).

18. Defendants' internal communications (obtained after Cantey resigned from Carbon IQ) reveal that Cooley knew at least as of July 12, 2022 that the March round had not been properly closed at all, due to Carbon IQ and Cooley's failure to file an amended charter with the State of Delaware authorizing the issuance of preferred shares (*id.*), which according to the State of Delaware's available public records did not occur until, at the earliest, September 2, 2022.

19. As detailed herein, internal communications between Cooley and Cantey further confirm Defendants' role in proposing concealed corrective actions to avoid optics issues and to ensure continued fundraising, even in the face of multiple material violations. (*See, e.g.*, Exhibits D and S).

**C. Cooley is Retained to Jointly Defend Cantey, Individually, and Carbon IQ in the Boisvert Litigation.**

~~15.~~20. On April 18 and 19, 2022, Carbon IQ and Cantey were each personally served with a California state lawsuit, captioned *Justin Boisvert v. Carbon IQ, Inc. (d/b/a Rumby), Benjamin Cantey, et al.*, Case No. 22STCV12600 (the "Boisvert Litigation"), ~~wherein Justin Boisvert asserted various employment and fraud claims against both Carbon IQ and Cantey concerning~~which concerned events relating to Mr. Boisvert's early involvement with Carbon IQ in 2019/2020. (*See* Exhibit E).

21. ~~Cooley represented both Carbon IQ and Cantey, individually,~~ The original Boisvert Complaint alleged, among other things, that Cantey breached his contract with Carbon IQ, breached his fiduciary duties, committed fraud, wrongfully terminated him and violated discrimination laws. (*Id.*) Boisvert also states in his original Complaint that Cantey had been fired

in 2019 by his co-founders from his CEO role at Park Evergreen, Inc. dba Plot ("Plot") for stealing money from Plot and defrauding its investors. (*Id.* at ¶6).

22. On May 4, 2022, Cooley agreed to jointly represent Cantey, individually, and Carbon IQ, in the Boisvert Litigation, ~~and~~ with Tu and Mayhugh serving as litigation counsel.

23. Cooley removed the matter to federal court ~~in May 2022.~~ . *See Boisvert v. Carbon IQ, Inc. (d/b/a Rumby), Benjamin Cantey, et al.*, Case No. 2022-cv-3303 (C.D. Cal.).

**D. Hallinan and Wang's Communications with Plaintiffs Prior to July 18, 2022.**

24. On May 17, 2022, Cantey emailed Hallinan and Plaintiffs' counsel, Zachary Shapiro (with copy to Gould), introducing them and asking them to work together to document a side letter confirming an agreement made with Gould during Carbon IQ's Series Seed round in March 2022 concerning Gould being appointed to the Board of Directors. (*See* Exhibit F – May 31, 2022 email chain, p. 5).

25. From mid-May 2022 through early June 2022, Cooley attorneys Hallinan and Wang engaged in substantive discussions with Plaintiffs' counsel, Zachary Shapiro, regarding Gould's prospective board appointment at Carbon IQ, related board compensation and Plaintiffs' past and potential future investments in Carbon IQ.

26. These discussions included not only the drafting of a side letter documenting Gould's board appointment and related compensation in the form of securities, including equity interests, further tying Defendants' misrepresentations and omissions to the offer and issuance of securities governed by the Exchange Act, but also Cooley's efforts to remedy Carbon IQ's failure to honor Plaintiffs' full pro rata rights and properly convert Plaintiffs' Simple Agreement for Future Equity ("SAFE") during the March 2022 Series Seed round. As a result of this failure, Plaintiffs were issued a deficient number of securities (although as detailed further below,

Plaintiffs in fact later learned, after September 1st, that **no** securities had ever actually in fact been issued with the March round). Rather than disclose this error to new or existing investors, Cooley proposed resolving it by issuing additional securities (e.g., warrants or stock) in connection with Gould's board appointment.

27. In an email dated May 31, 2022, Hallinan communicated directly with Mr. Shapiro (copying Wang, Gould and Cantey), raising concerns about the proposed strike price of the proposed warrants due to Carbon IQ's pending priced financing round at $1.55 per share. Hallinan noted that using a $0.01 strike price could create "a red flag for future investors" and that it would be preferable to rely on a forthcoming 409A valuation to avoid triggering a taxable event and a 1099 issuance to Gould. Cooley also discussed simply issuing stock as an alternative. (*See* Exhibit F, p.1).

28. Hallinan's communications, copied to Wang, confirm Cooley, Hallinan and Wang's direct involvement in negotiating the sale and issuance of securities to Plaintiffs, including at that time efforts to structure and conceal prior equity allocation errors as part of the board compensation package.

29. At the same time, Cooley was representing Carbon IQ with a bridge financing round (resulting in the $140,000.00 July 18, 2022 SAFE investment by Plaintiffs) and was simultaneously preparing for a broader Series A raise. (*See, e.g.*, Exhibit B, Cooley May - July 2022 SAFE Financing Invoices).

30. On June 2, 2022, Hallinan and Mr. Shapiro further spoke concerning Carbon IQ's per share value, correcting Gould Ventures securities allocations, Carbon IQ's desire for Gould to join Carbon IQ's board, Plaintiffs' existing investments and upcoming expected bridge investment

in Carbon IQ, as well as preparation of the side letter confirming the additional terms negotiated for Gould upon being appointed a board member.

31. Hallinan's May 31st email and June 2 call are evidence of Defendants' Cooley, Hallinan and Wang's on-going scheme to conceal corporate defects, such as equity conversion and cap table errors, without any disclosure to existing or prospective investors. These communications also underscore Cooley's active role in facilitating securities issuances while managing optics and avoiding/minimizing perceived risks during Carbon IQ's ongoing fundraising efforts at the expense of transparency and investor protection.

32. Defendants' communications with Plaintiffs support Plaintiffs' allegation that Cooley was not acting at arm's length but had assumed an active role in advising on corporate terms directly affecting Gould's contemplated appointment, compensation, and potential legal exposure if appointed to the Board.

33. Through direct communications with Gould's legal counsel, Cooley helped shape the terms of Gould's anticipated board seat while simultaneously concealing material facts and information, including fraud allegations against Cantey that they were actively defending, the ongoing Texas Securities Board investigation, and their own conflict of interest in representing both Carbon IQ and Cantey, all of which bore directly on Gould's legal risks if he accepted the board appointment. These omissions, made during the course of their advisory relationship, gave rise to a special relationship and a duty of care, which Cooley breached, ultimately resulting in Plaintiffs' substantial harm. (*See, e.g.*, Exhibit G, June 8, 2022 email chain).

34. Cooley invoices further confirm that both Hallinan and Wang participated in the drafting of the side letter in late May/June and continued to communicate with Plaintiffs through Mr. Shapiro to facilitate Carbon IQ's July 2022 bridge financing, culminating in Gould Ventures'

additional $140,000.00 SAFE on July 18, 2022. (*See* Exhibit A - Cooley Gen. Corp. May-July Invoices; Exhibit B - Cooley May-July 2022 SAFE Financing Invoices).

35. Cooley invoices further confirm that, as of July 8, 2022, Cooley, Wang, and Hallinan were working to correct multiple undisclosed legal and governance issues, namely, Carbon IQ's "void" status in Delaware, its failure to file an amended charter authorizing the preferred shares sold in the March 2022 round, and the resulting legal invalidity of those securities issuances (collectively, the "Corporate Deficiencies"). Despite these ongoing corrective efforts, Cooley failed to disclose the Corporate Deficiencies, or their attempted fixes, to Plaintiffs, even as they continued engaging with Plaintiffs' counsel to facilitate Gould Ventures' additional $140,000 SAFE investment on July 18, 2022. (*See* Exhibit A - Cooley Gen. Corp. July Invoice; Exhibit B - Cooley July 2022 SAFE Financing Invoice).

36. June and July 2022 internal communications between Wang and Cantey reveal that Cooley, Hallinan and Wang knew that Carbon IQ's March 2022 financing round had not been legally completed due to the Corporate Deficiencies. (*See* Exhibit D - July 21, 2022 email chain dating back to June 29, 2022).

37. On June 29, 2022, Wang informed Cantey that Carbon IQ was in "void" status with the State of Delaware as of March 31, 2021, due to failure to file taxes and required documents, preventing Cooley from filing the charter amendment. (*See* Exhibit D, p. 11).

38. On July 12, 2022, Wang further confirmed that Carbon IQ had never filed a restated charter authorizing the preferred shares sold to investors in the March round. She wrote, "This also means investors don't hold any preferred shares, since the preferred shares were never authorized and don't exist in the first place." (*See* Exhibit D, p. 6).

39. Wang proposed two options to resolve the issue: (1) ratify the defective share issuance using a certificate of validation and internal consents without disclosing to investors; or (2) unwind and redo the financing. Cantey, with Cooley's guidance and approval, chose the ratification option to avoid scrutiny from investors and prospective Series A participants. (*Id.*).

40. Prior to the July 18, 2022 SAFE Plaintiffs were never informed that their preferred shares did not legally exist, nor were they advised of Carbon IQ's "void" status or the charter filing failures.

41. This concealment was especially significant in light of Plaintiffs' two investments in March 2022. Plaintiffs initially invested $90,000, as well as an additional $10,000 SAFE investment, with no shares having been issued and was deprived by Defendants of the right to recover his investments.

42. On June 2, 2022, Cooley, Hallinan and Wang acknowledged equity allocation issues and proposed issuing warrants to Gould as part of a board compensation package to "make up" for the shortfall, without informing Plaintiffs that no shares had actually been issued due to fundamental Corporate Deficiencies that rendered the round invalid.

43. As a result, Plaintiffs' belief that they held valid preferred shares in Carbon IQ was based on material omissions and misrepresentations by Cooley. At no time were Plaintiffs informed that Carbon IQ had failed to file an amended charter or that their preferred shares were legally nonexistent. These facts were not disclosed until after Carbon IQ's collapse and the release of internal emails.

44. Cooley attorneys were not only involved in governance matters but also facilitated the securities transactions themselves. For example, in a June 29, 2022 email, Wang (with Hallinan copied) explicitly confirmed that Cooley had prepared and circulated SAFEs to investors using

DocuSign, stating that "Michael hasn't opened the DocuSign we sent yesterday, can you give him a nudge?" (*See* Exhibit D, pp. 11-13). Cooley's 2022 SAFE Financing Invoices further confirm Cooley's (and Hallinan and Wang's) direct involvement in preparing, approving and circulating SAFEs for Carbon IQ financing rounds. (*See* Exhibit B). This evidences Cooley's direct participation in soliciting and executing securities agreements with investors.

**E. Cooley, Hallinan and Wang are Informed of Additional Fraud Allegations and Proofs Relating to Cantey Fraudulent Misconduct in mid-June 2022.**

45. On June 13, 2022, Boisvert's counsel (Russell M. Selmont, Esq.) called defendant Tu at Cooley to personally advise Tu that Cantey had created and forged false Carbon IQ documents and had engaged in similar misconduct in Texas at Plot. (*See* Exhibit H) (Declaration of Russell M. Selmont ("Selmont Decl.")), dated June 13, 2023, filed with the United States Bankruptcy Court, Southern District of Ohio, in connection with *In re Carbon IQ, Inc*., Case No. 22-12076).

16.46. Mr. of Cantey's fraudulent conduct with respect to both Carbon IQ as well as with a prior company Cantey had been involved with in Texas. Defendant Tu was Selmont provided Tu with specific details concerning Cantey's extensive fraudulent activities, including meta data proving Cantey had fraudulently created a forged Carbon IQ key documents, as well as information concerning an active securities fraud investigation of Cantey in Texas by a Financial Examiner in the Enforcement Division of the Texas State Securities Board. *See Exhibit 1*, ¶8 (Declaration of Russell M. Selmont, dated June 13, 2023, filed with the United States Bankruptcy Court, Southern District of Ohio, in connection with *In re Carbon IQ, Inc*., Case No. 22-12076). ("Texas Securities Board"). *See id* at ¶¶'s 8-10.

47. Thereafter, on June 15, 2022, Mr. Boisvert's counsel (Mr. Selmont) filed a Motion for Remand in the Boisvert Litigation (*see* Exhibit *1*, startingH, at pdf p. 91), attaching sworn

Declarations of Justin Boisvert~~, Elliot Chen, Esq.~~ (“Boisvert Decl.”) and Benjamin Smith (the current CEO of Plot, the prior Texas company Cantey had stolen from and defrauded~~). Each of these Declarations (*id.* at pdf pages 112, 123 and 128, respectively))~~ (“Smith Decl.”).

~~17.~~48. The Boisvert Decl. and Smith Decl. each detailed specific ways in which Cantey had engaged in fraudulent activities with respect to both Carbon IQ and ~~Cantey's prior company~~Plot, including forensic evidence ~~of Cantey's fraudulent conduct.~~ that Cantey had forged key Carbon IQ documents. (See Exhibit I, Boisvert Decl. at ¶¶'s 22-25 and Exhibit J, Smith Decl. at ¶¶'s 2-10) (exhibits omitted).

~~C.~~ Mr. ~~**Cooley Defendants' Failure to Disclose Fraud Allegations**~~

~~18. When Cooley Defendants undertook joint defense representation of Carbon IQ and Cantey in the Boisvert Litigation, and during the time Cooley Defendants were jointly defending Carbon IQ and Cantey, Cooley Defendants knew that GV was a shareholder of Carbon IQ, that Plaintiffs were considering an additional monetary investment into Carbon IQ and that Mr. Gould was negotiating with Carbon IQ and Cantey to become a member of the Board of Directors of Carbon IQ.~~

~~19. Despite having knowledge of these issues, Cooley Defendants deliberately and/or recklessly concealed from Plaintiffs critical information regarding fraud allegations being asserted against Cantey. These included both Cantey's fraudulent activities related to Carbon IQ and an active investigation by the Texas State Securities Board into securities fraud violations tied to Cantey's previous involvement with another company in Texas.~~

~~20. While jointly representing Carbon IQ and Cantey in the Boisvert Litigation, Cooley Defendants were also continuing to assist Carbon IQ and Cantey with obtaining additional investor financing, including from Plaintiffs, as well as other investors.~~

21. Cantey's fraudulent misconduct – both with respect to Carbon IQ and the active Texas State Securities Board's investigation against Cantey – was material to Carbon IQ's investors, including Plaintiffs. This information was also crucial to Mr. Gould personally, as he was negotiating his position as a Board member of Carbon IQ. Despite the importance of this information, Cooley Defendants purposely, recklessly, and/or negligently failed to disclose these material facts to Plaintiffs, other shareholders, or investors of Carbon IQ, including Refinery Management.

**D. Cooley Defendants' Continued Failure to Disclose Fraud Allegations Against Cantey While Plaintiffs are Preparing to Invest Additional Monies into Carbon IQ**

49. In July 2022, Cooley Defendants were fully aware that Plaintiffs were preparing to make a substantial investment in Carbon IQ and that Selmont further certified that following his June 13th call with Tu that "over the next several months, I had multiple phone conversations with Cooley in which I inquired if they had their experts complete their review to determine if Cooley believed the Forged Documents were authentic. Each time Cooley lawyers stated they were still reviewing but not in a position to discuss with me." (Exhibit G, ¶10) (Selmont Decl.).

50. Cooley's June invoice for the Boisvert Litigation confirms that Hallinan, Mayhugh and Tu spoke with Cantey on June 18, 2022 regarding "open items" and strategy to oppose Boisvert's remand motion. (*See* Exhibit C, Cooley June Boisvert Litigation Invoice).

51. Upon information and belief Hallinan and Wang were advised of the content of Mr. Selmont's communication with Tu and were provided copies of the Boisvert and Smith Declarations and thus knew, in June 2022, among other things, of Cantey's forging of key Carbon IQ documents, document fraud at Plot and that Cantey was the subject of an active securities fraud investigation in Texas.

**F. Cooley, Hallinan and Wang Fail to Disclose Boisvert Litigation Fraud Allegations and Proofs to Plaintiffs and Fail to Disclose Numerous Additional Material Corporate Violations.**

52. Cooley, Hallinan and Wang, while directly communicating with Plaintiffs in June and July (prior to July 18th) to facilitate Gould Ventures' anticipated additional July investment, as well as Gould's anticipated acceptance of a board seat, knew about the serious and documented corporate fraud allegations against Mr. Cantey as well as the active Texas Securities Board investigation of Cantey and intentionally withheld this material information from Plaintiffs.

53. Cooley, Hallinan and Wang directly communicated with Plaintiffs in July concerning the upcoming Series Seed round, including discussions concerning Plaintiffs' pro-rata rights for the anticipated upcoming SAFE, which was completed on July 18, 2022.

54. Cooley, Hallinan and Wang were directly involved in preparing, reviewing and circulating SAFE's for Carbon IQ investors, including Plaintiffs, and this is evidenced by Cooley's SAFE Invoices to Carbon IQ reflecting the work performed by Cooley, Hallinan and Wang from April through August 2022 concerning Carbon IQ SAFES. (*See* Exhibit B - Cooley 2022 SAFE Financing Invoices, April to August, 2022).

55. Cooley, Hallinan, Wang and Tu knew that the Boisvert Litigation, and the fraud revelations relating to it, would present a serious challenge to Carbon IQ's ability to continue raising capital from investors, and they knew it was material information that should have been disclosed to the investors they were directly communicating with to obtain additional financing for Carbon IQ, including Plaintiffs.

56. On July 15, 2022, Cantey emailed Hallinan asking for guidance on how to inform investors about the Boisvert Litigation, thereby confirming to Cooley that the lawsuit had not been disclosed to investors, including Plaintiffs.

57. Cooley, Hallinan and Wang still failed to disclose the Boisvert Litigation to Plaintiffs while actively working with Plaintiffs to negotiate the board of directors appointment and to complete Plaintiffs' additional $140,000 SAFE just a few days later, on July 18, 2022, with Plaintiffs receiving a SAFE reviewed and approved by Cooley, Hallinan and Wang that misrepresented Carbon IQ's Corporate Deficiencies and falsely represented that Carbon IQ was not aware of any violation of law or contractual obligation that could have a material adverse effect on Carbon IQ. (*See* Exhibit K, p. 6, section 3) (July 18, 2022 SAFE).

58. A July 21, 2022 email chain between Wang, Hallinan and Cantey confirms that Cooley, Hallinan and Wang knew that the Boisvert Litigation and related proofs of forgery by Cantey should have been disclosed to Plaintiffs prior to Plaintiffs' July 18, 2022 SAFE. The email refers to Cooley's data room for due diligence and provides Cantey a due diligence checklist that includes a section on disclosure of any lawsuits against Carbon IQ or Cantey, which they describe as including materials that should be made available to investors in Cooley's Carbon IQ's data room. (*See* Exhibit D) (July 21, 2022 email chain, p. 1).

59. Yet, Cooley, Hallinan and Wang knew about the Boisvert Litigation, fraud proofs provided by Mr. Selmont, the Boisvert and Smith Decl.'s and the active Texas Securities Board investigation of Cantey for well over a month prior to Plaintiffs' July 18, 2022 SAFE but had not disclosed any of it to Plaintiffs, not even the basic fact that there was a significant lawsuit pending against Carbon IQ and Cantey, and, as detailed further below, had not even yet prepared a litigation summary to include in their data room.

60. Cooley's invoices to Carbon IQ in June and July further confirm that Hallinan and Wang also knew of numerous additional Carbon IQ corporate deficiencies at least as of June 24, 2022 and through and including July 17, 2022, including the failure of Carbon IQ and Cantey to

properly execute and issue Plaintiffs' equity conversions in March 2022 and that Carbon IQ was in void status as it had not complied with Delaware's legal and regulatory requirements (the Corporate Deficiencies). (*See* Exhibits A and B - Cooley June and July General Corporate and 2022 SAFE Financing Invoices, respectively).

61. Wang's July 12, 2022 email (with Hallinan copied) confirms Defendants' knowledge prior to the July 18, 2022 SAFE that Carbon IQ had failed to file a restated charter authorizing the issuance of shares sold to investors, including Gould Ventures, in March 2022, acknowledging that the failure meant the investors, including Gould Ventures, did not in fact hold the preferred shares they were to have been granted in March as such shares in fact never existed. (*See* Exhibit D - July 21, 2022 email chain, p. 6).

62. Instead of disclosing these corporate regulatory violations, and the fact that Plaintiffs had never been issued the shares for which they paid $90,000, along with the additional $234,000 in prior SAFE investments that Plaintiffs previously invested that should have converted into Carbon IQ shares in March 2022, Wang and Hallinan devised a ratification plan with Cantey to avoid having to disclose Carbon IQ and Cantey's malfeasance to Carbon IQ's investors, including Gould Ventures, and to avoid addressing potential "covenant breaches" and other "negative implications", *id.* a material omission that deprived Plaintiffs of their right to seek recovery of their $90,000 investment from the March 2022 Series Seed round.

63. Cooley, Hallinan and Wang deliberately, or in the alternative, recklessly, failed to disclose any of this information while at the same time actively working with and directly communicating with Plaintiffs concerning Gould Ventures anticipated July 18, 2022 SAFE, knowing that disclosure of these multiple serious issues would negatively impact Carbon IQ's

ability to continue raising the additional capital that Cooley was retained to assist with on April 5, 2022.

### G. Cooley, Hallinan and Wang's Misrepresentations in the July 18, 2022 SAFE Agreement.

64. On July 18, 2022, Plaintiffs executed the new SAFE, investing an additional $140,000.00 into Carbon IQ.

65. Plaintiffs would not have purchased additional securities from Carbon IQ had Defendants disclosed the evidence and facts they had full knowledge of and were deliberately concealing from Plaintiffs concerning: i) Cantey's egregious fraudulent conduct at Carbon IQ; ii) Cantey's fraudulent conduct as CEO of Plot; iii) that there was an active Texas Securities Board investigation of Cantey; and/or iv) the Corporate Deficiencies that had already been uncovered by Defendants, including the fact that Gould Ventures had never in fact been issued the preferred shares Gould Ventures should have been granted in March 2022, which Defendants deliberately planned to correct without prior notice to Plaintiffs.

66. In furtherance of their active participation in a scheme and course of conduct to deceive and mislead Plaintiffs, in the July 18, 2022 SAFE it was falsely represented to Plaintiffs that Carbon IQ was not aware of any violation of law by Carbon IQ and was not aware of any contract violations that could have an adverse impact on Carbon IQ. (*See* Exhibit K, p. 6 - July 18, 2022 SAFE).

67. Cooley, Hallinan and Wang, as counsel for Carbon IQ, participated in, reviewed and approved Carbon IQ's SAFE's to be circulated to investors in the July 2022 fundraising round. (*See* Exhibit B - Cooley 2022 SAFE Financing Invoices, June and July).

68. Defendants were in charge of Carbon IQ's July fundraising round and Cooley's 2022 SAFE Financing Invoices and General Corporate Invoices to Carbon IQ document

Defendants' review, vetting, and distribution of Carbon IQ SAFE's for the July fundraising round, including Plaintiffs, which misrepresented knowledge of Corporate Deficiencies that included violations of Delaware corporate rules and regulations, as well as significant and serious claims of legal violations by Cantey and Carbon IQ. (*See* Exhibits A and B).

69. Defendants knew, or were reckless in not knowing, that Carbon IQ's representations in Plaintiffs' July 18, 2022 SAFE were materially false or misleading at the time they were made. (*See* Exhibit K, p. 6).

70. Prior to Plaintiffs' July 18, 2022 SAFE Defendants knew of Carbon IQ's Corporate Deficiencies, the serious fraud allegations against its founder, and outstanding legal liabilities to Carbon IQ investors relating to the failed March fundraising, all of which Defendants knew were not previously disclosed to Plaintiffs.

71. Defendants, as well as Tu and Mayhugh, further knew prior to July 18, 2022 specific details about Boisvert's contract breach and the serious fraud allegations against Cantey, they had received meta data evidence of Cantey creating forged Carbon IQ documents that were not previously disclosed to Plaintiffs and were misrepresented in the SAFE, and they had specific details relating to Cantey being investigated by the Texas Securities Board for securities fraud in connection with Plot.

72. Defendants deliberately omitted and misrepresented the above material information from the SAFE to induce Plaintiffs to execute the July 18, 2022 SAFE.

73. The multiple corporate violations, the non-existence of preferred shares that Defendants knew Gould Ventures should have been issued in March 2022, the corporate fraud allegations and proofs that Defendants were in possession of prior to July 18, 2022, and their knowledge of an active Texas Securities Board investigation into Cantey each separately and

collectively were material to Gould Ventures' July 18, 2022 SAFE investment, which would not have been made absent Defendants' wrongful misrepresentations and omissions.

74. Cooley, Hallinan and Wang worked in concert with Cantey to promote and procure additional securities financing for Carbon IQ - including Gould Ventures' July 18, 2022 SAFE - while actively and purposefully failing to disclose the multiple corporate defects, proofs of prior corporate fraud by Cantey and that Cantey was being investigated by the Texas Securities Board for securities fraud, culminating in the express misrepresentations in Plaintiffs' July 18th SAFE that facilitated Defendants continuing scheme to deceive Plaintiffs and induce Plaintiffs' July 18, 2022 securities investment via the SAFE.

**H. Continuing Course of Wrongful Conduct Following July 18, 2022 SAFE.**

75. The day after Gould Ventures invested the additional $140,000.00 via the SAFE, Cooley invoices reveal Hallinan and Wang were continuing to work on fixing the significant undisclosed Corporate Deficiencies they had uncovered, including preparation of ratification documents relating to the March 22nd Series Seed, thus continuing their active and deliberate efforts to hide the Corporate Deficiencies uncovered prior to Plaintiffs' July 18th SAFE, the serious corporate fraud allegations against Cantey and the active securities fraud investigation into Cantey by the Texas Securities Board, all of which they had failed to disclose and expressly misrepresented in the July 18th SAFE and continued to fail to disclose while next proceeding to continue to assist with having Gould appointed to Carbon IQ's board. (*See* Exhibits A and B - Cooley General Corporate and 2022 SAFE Financing Invoices, July and August).

76. Defendants knew, prior to Plaintiffs' July 18, 2022 SAFE, that Gould would soon be appointed to a Board of Director position following the closing of Carbon IQ's bridge financing in July, including Plaintiffs' July 18, 2022 SAFE.

77. Although Wang and Hallinan were communicating at least as of July 15th with Cantey regarding disclosing the Boisvert Litigation to Carbon IQ investors it was not until August 18, 2022 that Tu prepared a draft litigation summary and conferred with Hallinan and Mayhugh regarding his draft. (*See* Exhibit C - Cooley Boisvert Litigation Invoice, August).

78. Cooley's August invoice reveals that the following day, August 19th, Hallinan reviewed and edited Tu's draft summary and communicated with Tu regarding his "thoughts" on it, followed by a time entry by Mayhugh stating that she had drafted "a one-pager for potential investors" with "correspondence re: same" without referencing any of the serious fraud allegations or prior misconduct by Cantey. (*Id.*)

79. An August 19th email chain between Mayhugh and Cantey (with Hallinan and Tu copied) reveals Mayhugh emailed Cantey a litigation summary that intentionally omits any reference to the serious fraud allegations and proofs Cooley, Hallinan, Tu and Mayhugh received months earlier concerning Cantey's fraudulent creation of Carbon IQ documents, Cantey's fraudulent activity at his prior company Plot and the active Texas Securities Board investigation into Cantey. (*See* Exhibits L and M - August 19, 2022 email chain and copy of Cooley litigation summary, respectively).

80. Cooley's August Boisvert Litigation Invoice further reveals that on August 20th Hallinan reviewed "separation agreements" that are understood in the context of this matter to be the contract documents that produced meta data proved were forged by Cantey, followed within days by Hallinan, Tu and Mayhugh discussing and reviewing options to settle the Boisvert Litigation. (*See* Exhibit C).

81. Cooley, Hallinan, Wang, Tu and/or Mayhugh did not provide the litigation summary, nor disclose even the existence of the Boisvert Litigation, to Plaintiffs until weeks after

Gould accepted the Board seat although Cooley's August invoice reveals Tu and Mayhugh engaged in discussions concerning the Boisvert Litigation with another Carbon IQ investor/shareholder, C2V, on August 23, 2022 and with Oren Sauberman (General Counsel for investor/shareholder Laundry Capital). (*See* Exhibit B - Cooley Boisvert Invoice – August).

82. Cooley, Hallinan, Wang, Tu and Mayhugh's continued intentional failure to disclose the material Boisvert Litigation details to Plaintiffs, and their misleading litigation summary, are further evidence of Cooley, Hallinan and Wang's ongoing scheme to deceive and mislead Plaintiffs.

83. Cooley, Hallinan, Wang, Tu and Mayhugh knew disclosure of the Boisvert Litigation lawsuit details would hinder Carbon IQ's ability to obtain the additional investor financing Cooley was retained to assist with and would jeopardize Carbon IQ's future and Cooley, Hallinan and Wang deliberately and knowingly kept this information from Plaintiffs and other investors.

84. For example, additional evidence of Cooley's ongoing concealment strategy is reflected in an August 30, 2022 email from Refinery Management, LLC to Cantey, sent just days after Refinery invested in Carbon IQ.

85. In the email, Refinery wrote: *"Following up on our conversation today regarding additional due diligence requests, normally, we share the following document and work through it with the founders to fully understand the business and its risk. You have already shared a lot of this, candidly, as we have already invested, some of it is not applicable at this point."* (*See* Exhibit O).

86. Refinery's message included a list of standard diligence materials, such as historical income statements and balance sheets, confirming that even basic due diligence was incomplete at

the time of their investment and they have asserted in the Refinery Litigation that they were never informed of the Boisvert Litigation.

87. Defendants' own admissions demonstrate that Cooley cultivated an environment in which material risks were intentionally concealed until after investor capital had been secured.

88. While serving as both corporate and litigation counsel, Cooley undertook an internal investigation into the merits of the Boisvert Litigation and the allegations asserted therein.

89. The results of that investigation were intentionally withheld from investors to induce them to make additional investments.

90. Upon information and belief, Cooley concluded that the allegations in the Boisvert litigation were well-founded.

91. Nonetheless, and at Cantey's direction, Cooley concealed those findings from investors, acting in concert with Cantey to avoid reputational harm to Carbon IQ.

92. Upon information and belief, Cantey informed Cooley's attorneys, prior to Refinery's investment, that he had fabricated certain documents.

93. Upon information and belief, Cantey is expected to testify that he was candid with his attorneys about the fabricated documents both before and after Refinery's late August investment.

94. Plaintiffs are already in possession of documents where Cantey admitted to his attorneys that he had engaged in fraudulent financial activity, yet the attorneys took no action other than to withdraw.

95. Upon information and belief, Defendants failed to upload, update, or disclose key diligence documents in the Cooley-hosted data vault, including accurate historical financials and a truthful summary of the Boisvert Litigation. By failing to include a truthful summary of the

Boisvert Litigation Cooley continued its scheme of omitting facts necessary to make other communications to investors not misleading.

## I. Cooley, Hallinan and Wang Misrepresent Plaintiffs' Shareholder Status.

96. An August 20th email chain between Wang (with Hallinan copied) and Mr. Shapiro, contains an August 11th request from Plaintiffs to Hallinan and Wang to provide copies of Gould Ventures' share certificates, a request initially ignored by Hallinan and Wang, who both knew even prior to July 18, 2022 that the shares had never in fact been issued and that Plaintiffs had never been informed of this material fact. (*See* Exhibit N, p. 2).

97. Wang (with Hallinan copied) later advised Mr. Shapiro via an August 29th email that copies of Plaintiffs' shares could not be uploaded to Carta until Cooley filed the amended charter and closed out financing, falsely implying, and misrepresenting, that Plaintiffs' preferred shares existed when Wang and Hallinan knew that the March financing had originally failed due to undisclosed corporate deficiencies and the shares in fact never existed. (*See* Exhibit P, p. 6).

98. Within days of Gould accepting a board seat as of September 1, 2022, Defendants were still working on corrective actions in late August (including the undisclosed ratification of defective acts which was not completed until September 2) and Defendants still never informed Plaintiffs of these actions or of the original failures.

99. The concealment of the Corporate Deficiencies and undisclosed retroactive fixes further misled Plaintiffs, who were unaware that as of the July 18, 2022 SAFE, and even as late as September 1, 2022, Plaintiffs shares were non-existent due to unpublicized ratification steps to secretly fix the March 2022 financing round that were not completed until September 2, 2022.

100. Gould was misled by Defendants into executing an Action by Written Consent on August 29, 2022, that included certain retroactive corporate approvals that were described as clean-ups and was never informed by Cooley that they were required to correct prior corporate failures that included the failure to issue Plaintiffs' preferred shares from March 2022, but instead was deliberately misled by Defendants to understand that it was to authorize additional shares for the upcoming financial round. (*See, e.g.*, Exhibit P, p.5).

**J. Cooley Falsely Confirms Existence of D&O Insurance.**

101. In connection with the Boisvert Litigation Hallinan was advised by Cantey in April 2022 that Carbon IQ did not have D&O insurance and there was no insurance coverage available to defend against the Boisvert Litigation.

102. As the time approached in mid-August for the appointment of Gould as a director, on August 16, 2022 Mr. Shapiro requested confirmation from Wang (with copy to Hallinan) that Carbon IQ had adequate D&O insurance to cover Gould as a director. (*See* Exhibit Q, pp. 1-2).

103. Wang (with Hallinan copied) responded on August 19th stating "confirmed on the insurance." (*Id.*).

104. On August 20, 2022, Gould was provided a copy of the August 16th request from his counsel, together with Wang's (with copy to Hallinan) August 19th confirmation of the D&O insurance and he relied on that confirmation when he joined the Board on September 1, 2022. (*See* Exhibit Q, pp.'s 1-2).

105. Neither Wang nor Hallinan disclosed to Plaintiffs that Defendants knew: a) that as early as April 2022, Carbon IQ did not have D&O insurance to cover the undisclosed Boisvert Litigation, b) that Carbon IQ and Cantey were in the midst of an undisclosed shareholder co-founder/shareholder lawsuit that Cooley was actively defending on behalf of both Carbon IQ and

Cantey, individually, and where Cooley had received evidence of serious corporate fraud by Cantey as of mid-June 2022, as well as the details of an active Texas Securities Board investigation of Cantey or c) that Cooley was still in the process of attempting to correct undisclosed corporate deficiencies uncovered prior to July 18, 2022 which continued to deprive shareholders, including Plaintiffs, of shares that were to have been issued to them in March.

106. Defendants knew, and had known since at least April 2022, that Carbon IQ did not have D&O insurance, as Cantey had explicitly informed them there was no D&O insurance during their early engagement to represent him and Carbon IQ in the Boisvert Litigation, and knew as of August 31st that they had still not received evidence of the already repeatedly confirmed D&O insurance from Cantey despite repeated requests. (*See* Exhibit R).

22. Defendants failed to disclose to Plaintiffs Mr. Gould was anticipating taking a Board position with Carbon IQ. Despite this knowledge, Cooley Defendants willfully and purposefully withheld and failed to disclose to Plaintiffs critical material information regarding Cantey's fraudulent misconduct.

23. On July 18, 2022, Plaintiffs invested an additional $140,000.00 into Carbon IQ. They would not have invested had Cooley Defendants disclosed Cantey's egregious fraudulent conduct, which Cooley Defendants had known about for over a month. Instead, Cooley Defendants, acting in concert with Cantey, deliberately and actively concealed this material information from Carbon IQ's shareholders, investors and potential investors.

**E. Cooley Defendants' Continued Failure to Disclose Fraud Allegations and False Representation of D&O Insurance to Induce Mr. Gould to Accept a Position as a Board Member of Carbon IQ**

24. In August 2022, prior to accepting a Board position with Carbon IQ, Mr. Gould, through counsel, requested confirmation from Cooley Defendants that Carbon IQ had Directors

and Officers (D&O) insurance to provide coverage for Mr. Gould in his anticipated capacity as a Director.

25. On August 19, 2022, Cooley Defendants expressly confirmed to Plaintiffs via email that D&O insurance was in place to cover Mr. Gould in his capacity as a Director of Carbon IQ. *See Exhibit 2.*

26. Prior to September of 2022, Cooley Defendants were aware that Cantey fabricated and/or forged certain documents that were produced in the Boisvert Litigation.

27. Prior to September of 2022, Cooley Defendants failed to disclose to Plaintiffs that Cantey fabricated and/or forged certain documents in the Boisvert Litigation to Plaintiffs or other investors.

28. Prior to September of 2022, Cooley Defendants took no action after being made aware that Cantey fabricated and/or forged certain documents in the Boisvert Litigation. Instead, they continued to defend the Boisvert Litigation and withheld undisputed evidence of Cantey's fraud from Plaintiffs and other shareholders of Carbon IQ.

29. Prior to September of 2022, Cooley Defendants were aware that Mr. Gould was seeking financial records of Carbon IQ that would expose fraudulent activity of Cantey. Cooley Defendants failed to produce these documents until Mr. Gould accepted a position on the Board of Carbon IQ.

30. Although Cooley Defendants knew Mr. Gould's acceptance of a Board position was contingent upon the existence of adequate D&O insurance, Cooley Defendants failed to disclose to Plaintiffs that Cooley Defendants had never actually received any evidence confirming the existence of such insurance.

~~31.~~107.~~Cooley Defendants failed to disclose to Mr. Gould~~ that, as late as of August 31, 2022, ~~Cooley Defendants~~they were still actively following up with Cantey to obtain documentary evidence of the existence of the D&O insurance that ~~Cooley Defendants~~they had already previously affirmatively confirmed existed, in writing, to Plaintiffs. (*See* Exhibit R).

108. ~~Throughout~~ Despite knowing it did not previously exist, and having every reason to know (or certainly at least seriously doubt) that it had not in fact been obtained prior to September 1, 2022, Hallinan falsely claimed in an October 3, 2022 email to Plaintiffs' counsel that he was merely "guessing" Carbon IQ lacked the D&O coverage that Defendants had previously expressly confirmed to Plaintiffs was in existence prior to September 1, 2022. (*See* Exhibit T). Specifically, in the October 3rd email from Hallinan to Gould (with Wang copied), Hallinan stated, "I've asked for the D&O policy a number of times and my guess is it doesn't exist as it didn't exist[sic] in April when the initial founder suit was filed." Hallinan further acknowledged that it was unlikely any insurer would retroactively provide coverage given the ongoing Boisvert litigation (*Id.*).

109. This statement was knowingly false and intended to conceal Cooley's earlier misrepresentations and failures to verify the D&O coverage it had repeatedly confirmed existed. This calculated misstatement aligns with Cooley's ongoing pattern of concealing material facts when Gould, after being appointed to the Board, began seeking confidential Carbon IQ records and questioning corporate governance failures and Carbon IQ's actual insurance status.

110. Cooley, Hallinan and Wang knew Gould's acceptance of a Board position was contingent upon the existence of adequate D&O insurance, and that Gould would not have accepted the Board position if he knew that D&O insurance did not exist.

111. Defendants failed to disclose to Plaintiffs that they had never actually received any evidence confirming the existence of any D&O insurance.

112. Wang and Hallinan repeatedly misrepresented the existence of D&O insurance to Plaintiffs in late August 2022, ~~Cooley Defendants~~while further ~~continued~~still continuing to actively conceal the existence of the Boisvert Litigation from Plaintiffs, in order to induce Gould to accept the Board of Directors position, which would help Carbon IQ and Cooley continue their financing efforts for Carbon IQ and ensure Gould would not cause any problems with other investors as they expected he would if they had disclosed to him Cantey's prior alleged fraudulent activity, the Texas Securities Board investigation and the corporate defects they were aware of, including that Gould Ventures, and all of the other investors in the March Series Seed round, had not been granted the preferred shares they should have been granted in March 2022.

113. Another example of Defendants' continued concealment occurred on August 29, 2022, when Wang, with Matt Hallinan copied, emailed Plaintiffs' counsel stating that shares "could not be reflected on Carta until the charter amendment is filed and financing is closed." (See Exhibit P, pp.'s 5-6) (Aug. 29th email). This communication misleadingly implied a routine administrative delay, when in fact Cooley was working at that same time to complete a ratification process to retroactively authorize the March 2022 Series Seed round, a process that was never disclosed to Plaintiffs and was not completed until September 2, 2022.

114. At no point prior to September 1, 2022, did Defendants inform Plaintiffs of Carbon IQ's prior void status, the failure to file the restated charter, or of the legal invalidity of the preferred shares. Instead, Cooley knowingly concealed these facts while continuing to solicit additional investments, and induced Gould to accept the Board position, consistent with their pattern of suppressing material information that could hinder fundraising optics.

115. Cooley, Hallinan and Wang, acting in concert with Cantey, deliberately and actively misrepresented and concealed material facts from Plaintiffs during and throughout their numerous communications with Plaintiffs from June 2022 continuing through September 1, 2022, when Gould accepted the Board seat.

116. Cooley, Hallinan, and Wang knew in August 2022 that Gould's appointment to the board was imminent and throughout August 2022, they knew, or recklessly disregarded, that Cantey fabricated and/or forged critical governance-related documents concerning the issuance and ownership of Carbon IQ securities, including a falsified separation agreement that materially affected equity ownership and Carbon IQ's capitalization table, documents that were material to Carbon IQ's investor representations and disclosures.

117. Throughout July and August 2022, Cooley, Hallinan, Wang, Tu and Mayhugh failed to disclose to Plaintiffs that Cantey fabricated and/or forged material governance-related documents concerning the issuance and ownership of Carbon IQ securities, including a falsified separation agreement that materially impacted equity ownership and Carbon IQ's capitalization table, documents central to Carbon IQ's investor representations and ongoing securities offerings.

~~32.~~118. Throughout August 2022, Hallinan, Wang, Tu and Mayhugh actively continued to conceal and fail to disclose to Plaintiffs the serious and material fraud allegations against ~~Mr.~~ Cantey, the CEO and only Board member of Carbon IQ. ~~Cooley Defendants had been aware of these allegations since at least mid-June 2022.~~

~~33.~~119. Relying on ~~Cooley Defendants' August 19, 2022, written email confirmation of the existence of~~ Defendants repeated confirmations that Carbon IQ had secured adequate D&O insurance ~~to cover Mr. Gould as~~ , including a ~~Director of Carbon IQ~~ written confirmation by email

on August 19, 2022 (*see* Exhibit 2) Mr.Q), Gould accepted the Director position at Carbon IQ on September 1, 2022, as, exactly as Cooley and Cantey had intended.

34. At no point prior to September of 2022 did Cooley Defendants disclose to Plaintiffs and/or other shareholders that it was in possession of undisputed evidence that Cantey had forged/fabricated documents in the Boisvert Litigation.

120. Mr. Gould would not have accepted a position as aon the Board member of Carbon IQ had he known that the D&O insurance, which Cooley Defendants, Hallinan and Wang misrepresented existed, did not, in fact, exist.

35.121. Gould would not have accepted a position on the Board of Carbon IQ had he known that Cooley, Hallinan, Wang, Tu, and Mayhugh were in possession of undisputedundisclosed and indisputable metadata evidence proving that Cantey had forged/ and fabricated critical Carbon IQ governance documents in the Boisvert Litigation. Mr. Gould would not have accepted a position as a Board member of Carbon IQ had he known that the D&O insurance, which Cooley Defendants falsely misrepresented as existing, was not in place.

36. Mr. Gould also would not have accepted a position as aon the Board member of Carbon IQ had Cooley Defendants, Hallinan, Wang, Tu, and/or Mayhugh disclosed the material fraud allegations against Cantey, which Cooley Defendants wrongfullyallegations they purposefully and actively concealed from Plaintiffs, as well as other investors and potential investors of Carbon IQ.

**F. The Cooley Defendants' Purposely Misleading "Case Description for Investors"**

37. Cooley Defendants' purposeful concealment in order to induce Gould's acceptance of the material fraud allegations against Cantey – intended to assist Cantey and Carbon IQ in

securing additional financing for Carbon IQ – is clearly revealed in a "Case Description for Investors" prepared by Cooley Defendants in August 2022 concerning the Boisvert Litigation.

38.122.Cooley Defendants' August 2022 "Case Description for Investors" (attached as *Exhibit 3*) purposely and knowingly omits any reference to the serious fraud allegations against Cantey that were revealed in the Boisvert Litigation. Despite actively defending Cantey individually in that litigation, Cooley Defendants simultaneously served as Carbon IQ's corporate counsel, creating a clear conflict of interest that resulted in harm to Carbon IQ and its shareholders. Board seat.

**G.K. Refinery Management, LLC**

39.123.The misrepresentations and omissions by Cooley Defendants' misconduct, Hallinan and Wang, as well as Tu and Mayhugh, as outlined herein, directly caused Mr. Gould to be personally named in a lawsuit filed by Refinery Management, LLC (the "Refinery Litigation").

40.124.Refinery Management, LLC invested Three Million dollars ($3,000,000.00) into Carbon IQ on August 26, 2022, just days before Mr. Gould, relying on Cooley Defendants' false representationsmisrepresentations and omissions in the July 18, 2022 SAFE and misrepresentations concerning the existence of D&O insurance, as well as on the material non-disclosures by Cooley, Hallinan, Wang, Tu and Mayhugh concerning the Boisvert Litigation, accepted a position as a Board member of Carbon IQ, on September 1, 20222.

41. As an existing shareholder and investor prior to September 1, 2022, and as someone Cooley Defendants were actively working with to appoint as a Director, Cooley Defendants owed a duty of care to Mr. Gould (and his company, GV) to disclose the material fraud allegations asserted against Cantey, which involved both Carbon IQ and the ongoing Texas State Securities Board investigation.

125. Plaintiffs were eventually Gould would not have accepted the Board seat, and would not have communicated with Refinery on August 26, 2022, if Defendants had not made material misrepresentations and omissions in the July 18, 2022 SAFE and concerning the existence of D&O insurance. Gould further would not have accepted the Board seat if Cooley, Hallinan, Wang, Tu, or Mayhugh had disclosed the material facts concerning the Boisvert Litigation and/or Carbon IQ's numerous corporate defects and violations.

42.126.Plaintiffs were sued by Refinery Management, LLC due to as a direct result of Cooley, Hallinan, and Wang's material misrepresentations regarding the existence of D&O insurance, as well as Cooley Defendants , Hallinan, Tu, and Mayhugh's deliberate omissions and failure to disclose critical details regarding Cantey's fraud.facts concerning the Boisvert Litigation. *See Refinery Management, LLC v. Carbon IQ, Inc., et al.*, 1:22-cv-00706 (S.D. Ohio 2022).

L. If Cooley Defendants had disclosed to Plaintiffs the material fraud allegations against Cantey related to Carbon IQ and the active investigation by the Texas State Securities Board, Plaintiffs would not have made the additional $140,000 investment in July 2022, would not have considered or accepted the board seat at Carbon IQ, and would not have participated in the call with Refinery Management, LLC in August 2022. The concealment of this **Continuing Course of Misconduct by Cooley, Hallinan and Wang after Gould is Placed on Board.**

43. Upon Gould's appointment to the Board on September 1, 2022, Defendants continued to withhold material information caused Plaintiffs to make decisions they would have otherwise avoided, including the investment, the board seat, and the interactions with Refinery Management.

44. Furthermore, if Cooley Defendants had disclosed to Plaintiffs the material fraud allegations asserted against Cantey related to Carbon IQ and the ongoing Texas State Securities Board investigation, and had not falsely misrepresented to Plainiffs that Carbon IQ had D&O

~~insurance, Mr. Gould would not have accepted a position on Carbon IQ's Board of Directors. As a direct result, he would not have been named in a lawsuit brought by Refinery Management.~~

**~~H. Cooley Defendants Continue to Actively Conceal Material Information from Plaintiffs After Mr. Gould Becomes a Director on September 1, 2022.~~**

~~45.~~127.~~Upon becoming a Board member on September 1, 2022, Cooley Defendants still failed to disclose to Mr. Gould the~~ serious fraud allegations against Cantey in the Boisvert Litigation~~ or~~, the ~~ongoing~~existence of an active Texas State Securities Board investigation into Cantey~~. Additionally, they never revealed~~, and the fact that ~~they~~Cooley had no documentary proof ~~of the existence of~~that Carbon IQ maintained any D&O insurance coverage to ~~cover Mr.~~protect Gould as a director.

128. ~~Late~~Emails between Hallinan and Cantey from late September 2022 ~~emails between Cooley Defendants and Cantey~~ confirm ~~their~~that Cooley and Hallinan continued ~~efforts~~ to assist Cantey in ~~concealing~~furthering the scheme to conceal his prior fraudulent conduct~~. Despite knowing~~ from investors, directors, and other stakeholders, including the forged separation agreement and the material allegations in the Boisvert Litigation.

129. For example, in late September 2022, after weeks of ~~Mr. Gould's concerns about potential fraud and his repeated~~unanswered requests for ~~documents, Cooley Defendants~~financial records and other confidential information that he was then entitled to as a Board member, Gould grew increasingly suspicious of Cantey's behavior. Hallinan admitted to Cantey in internal emails that he was "trying to avoid" ~~Mr.~~ Gould's calls and ~~described him~~referred to Gould as "persistent/demanding." ~~The emails show that while Cooley acknowledged Mr.~~These communications demonstrate that although Hallinan and Cooley were aware of Gould's suspicions and inquiries, they continued prioritizing the protection of Cantey, whom they also personally represented in the Boisvert Litigation (which was still not disclosed to Gould, a director at that

time), and focused on preserving Carbon IQ's external optics. Rather than investigating or disclosing the fraud concerns, Hallinan expressed worry to Cantey that Gould's ~~growing suspicions, they prioritized protecting Cantey and managing the company's optics, expressing concern that Mr. Gould's demands~~diligence could "cripple the company's financial availability" and "hinder potential financing options." ~~Cooley's focus on protecting~~(*See* Exhibit S) (September 28, 2022 Hallinan to Cantey email).

~~46.~~130.Cooley, Hallinan, and Wang's continued efforts to protect Cantey, while deliberately withholding from Gould both the serious fraud allegations and the active Texas ~~State~~ Securities Board investigation ~~from Mr. Gould, demonstrates a clear conflict of interest and a breach of their~~ into Cantey, prior to July 18th and continuing even after Gould had joined the Board on September 1st, further evidences their breaches of fiduciary duty and duty of care ~~to Mr. Gould as a board member. By failing to disclose these critical facts to Mr. Gould, Cooley breached their fiduciary duty and duty of care, leaving Mr. Gould uninformed about material fraud allegations and ultimately leading to his~~ owed to Plaintiffs. Their misrepresentations and omissions left Plaintiffs materially misinformed when executing the July 18th SAFE and directly contributed to and caused Gould's continued involvement ~~in~~with Carbon IQ ~~as a board member~~ under false pretenses~~. *See Exhibit 4*~~ and accepting the Board seat on September 1, 2022.

**M. Cooley ~~Defendants Withdraw~~Withdraws as Counsel for Carbon IQ and Cantey**

~~47.~~131.~~Mr.~~ Gould's persistent demands to Cooley and Hallinan in late September 2022 for ~~the production of~~confidential corporate documents and financial records ~~from Cooley Defendants and Cantey ultimately~~ led to the discovery of not only prior misrepresentations and material omissions by Cooley, Hallinan, Wang, Tu, and Mayhugh, but also Cantey's additional fraudulent financial misconduct, including the embezzlement of Refinery's $3,000,000.00 investment. Cantey's extensive ~~fraudulent conduct.~~financial fraud at Carbon IQ was only discovered by

Plaintiffs after Gould had been induced to join the Board under false pretenses resulting from Defendants' misrepresentation and concealment of material facts.

48.132.On October 7, 2022, Cantey admitted to Cooley Defendantsand Hallinan that Canteyhe had engaged in widespread fraudfinancial fraudulent conduct at Carbon IQ, including securities fraud at Carbon IQ, falsifying , falsification of business and financial information,records and misappropriatingmisappropriation of investor funds in Carbon IQ. . Following this admission. , Cantey sought adviceguidance from Cooley DefendantsHallinan on how to address his admitted fraudulent conductfinancial fraud with Mr. Gould. (*See* Exhibit 5. U) (Hallinan October 10, 2022 email chain, pp.'s 2-3).

49.133.Only after Cantey's October 7, 2022 admission of financial fraud and additional securities violations at Carbon IQ did Cooley Defendants informand Hallinan disclose to Plaintiffs, on October 10, 2022, that they wereCooley had been personally representing Cantey in the Boisvert Litigation and that Cooley was withdrawing as counsel for both Carbon IQ and Cantey. (*Id.*) This previously undisclosed dual representation constituted a clear conflict of interest, particularly in light of the evidence of Cantey's prior fraudulent conduct that Defendants possessed since at least mid-June 2022. This admission further confirmed that Cooley's continued representation of both Carbon IQ and Cantey created an undisclosed conflict of interest which tainted all prior legal advice given to Carbon IQ and its Board.

50. At no time prior to their withdrawal as counsel did Cooley Defendants disclose to Plaintiffs their prior concealed knowledge of the fraud allegations against Cantey, including those related to Carbon IQ and the ongoing Texas State Securities Board investigation against Cantey. These material nondisclosures caused significant harm to Plaintiffs, as well as to Carbon IQ and its other investors.

~~51.~~134.~~At no time prior to their withdrawal as counsel did Cooley Defendants ever disclose to Plaintiffs that Carbon IQ in fact had never obtained D&O insurance, thus leaving Mr.~~knowingly left Gould unprotected in his role as a Director of Carbon IQ~~ at a time when Cooley Defendants knew~~, despite their knowledge that Carbon IQ's CEO and ~~previously~~ sole prior Board member, Cantey, was ~~being charged with~~under investigation and ~~investigated for~~facing multiple fraud allegations ~~relating to~~arising from both Carbon IQ and ~~the prior company Cantey had been involved with~~his prior venture. Cooley's failure to disclose these material facts, while assuring Gould of nonexistent D&O insurance coverage, left him exposed to significant personal liability.

~~52.~~135.~~Mr.~~ Gould has been sued personally by a Carbon IQ investor, Refinery Management, LLC, and has been forced to expend, and continue to expend, personal funds to defend himself due to the absence of the D&O insurance that Cooley~~ Defendants~~, Hallinan and Wang falsely confirmed was in place. Furthermore, he remains at personal risk for any judgment that may be obtained in that litigation~~,~~ as a result of Cooley~~ Defendants'~~, Hallinan and Wang's false representations that adequate D&O insurance was in place to cover~~ Mr.~~ Gould.

~~53. Cooley Defendants were aware of the full extent of the material fraud allegations against Cantey and failed to disclose this critical information to Plaintiffs. This nondisclosure occurred despite their ongoing involvement and communication with Plaintiffs during the summer of 2022 regarding both investments in Carbon IQ and Mr. Gould's appointment to the Board of Carbon IQ.~~

136. ~~At a minimum, Cantey's misconduct~~Cantey's known misconduct at Carbon IQ, active investigation by the Texas Securities Board and the numerous Corporate Deficiencies known to Cooley, Hallinan and Wang raised serious and obvious red flags (such as the likelihood that Cantey was engaging in further fraudulent activity and the difficulty Carbon IQ would have

in obtaining D&O insurance given the claims against it), which only Cooley Defendants were aware of. Cooley Defendants).

54.137.Cooley, Hallinan and Wang willfully and recklessly chose to ignore and conceal this material information from Carbon IQ's shareholders and investors, including Plaintiffs, while at the same time misrepresenting to Plaintiffs the corporate status of Carbon IQ and misrepresenting that Carbon IQ had not violated numerous applicable rules and laws and breached contract related obligations that posed materially adverse consequences to Carbon IQ.

138. Even after Gould was appointed to the Board and began raising concerns that Cantey failed to provide confidential corporate documents that Gould requested, Cooley's conduct continued to reflect a pattern of concealment and mismanagement.

139. When Gould, through his legal counsel, issued a books and records request to obtain key corporate documents that Cantey had refused to provide, Cooley proposed that it conduct a formal internal investigation, including reviewing evidence and presenting findings to the Board. However, after Cantey later admitted to Cooley that he had engaged in extensive financial fraud at Carbon IQ, Cooley abandoned that process, failed to take corrective action, and quickly withdrew representation without protecting Gould.

140. Cooley even attempted to include Cantey as a signatory on an indemnification agreement prepared for Gould, despite the known allegations against Cantey. Gould refused to sign that indemnification agreement, which would have essentially indemnified Cantey. As a result, Cooley left Gould on the Board, without D&O insurance, without corporate counsel, and exposed to potential personal liability.

141. In early October Cooley had proposed a path forward involving a formal internal investigation, board-level review of findings, and the potential removal of Cantey. Cooley noted

that all communications and findings under this process would be protected by attorney-client privilege, and that the board could later waive such privilege if it determined doing so was in the company's best interests. Cooley never implemented this process though and instead withdrew shortly after Cantey privately admitted to financial fraud at Carbon IQ. The proposed structure, shielded by privilege and fully controlled by Cooley, further underscores their intent to prioritize self-preservation and continued concealment over transparency and their duty to Carbon IQ's investors and Board.

**COUNT I**

**(Violation of §10(b) of the Exchange Act and Rule 10b-5)**

~~55.~~142. Plaintiffs repeat and reallege each and every allegation set forth above as if more fully stated herein.

143. In violation of §10(b) of the Exchange Act and Rule 10b-5 ~~Cooley~~(a) and (c) Defendants Cooley, Hallinan and Wang engaged in a fraudulent scheme and course of conduct designed to deceive and mislead Plaintiffs, which included on-going concealment of material information and affirmative misrepresentations. This scheme was intended to, and did, induce Plaintiffs to invest an additional $140,000 to purchase Carbon IQ securities on July 18, 2022, and also deprived Plaintiffs of its rights to enforce or recover their prior $100,000 Series Seed investment from March 2022, which Defendants knew, as of July 12, 2022, had not been properly effectuated due to unissued shares.

144. In further violation of §10(b) and Rule 10b-5(b) Defendants Cooley, Hallinan and Wang made untrue statements of material fact and omitted material facts necessary to make other statements not misleading, including but not limited to ~~purposely and knowingly concealing material facts regarding~~, those made in connection with the July 18, 2022 SAFE financing and prior communications related to bridge financing.

145. The violations of Rule 10b-5(a), (b), and (c) consisted of the following fraudulent misrepresentations, omissions, and deceptive conduct from late May 2022 through July 18, 2022, including:

a) Knowingly misrepresenting in the July 18, 2022 SAFE that Carbon IQ was not in violation of any material statute, rule or regulation applicable to Carbon IQ;

b) Knowingly misrepresenting in the July 18, 2022 SAFE that Carbon IQ was not in breach of any material debt or contractual obligation that could reasonably be expected to result in a material adverse effect;

c) Failing to disclose numerous known corporate governance deficiencies and violations, including but not limited to Cooley's own discovery that Plaintiffs' preferred shares from the March 2022 Series Seed financing round had never been issued, and that as of at least July 6, 2022, Carbon IQ was not in good standing with the Delaware Secretary of State;

d) Concealing the existence of the Boisvert Litigation and its underlying fraud allegations against Cantey;

e) Failing to disclose material indisputable evidence of document forgery by Cantey, known to and possessed by Cooley, Hallinan, Wang, Tu, and Mayhugh by mid-June 2022, including metadata proving fabrication of governance-related agreements material to Carbon IQ's ~~founder, Cantey,~~ capitalization table; and

f) Failing to disclose that Cantey, Carbon IQ's CEO and sole director at the time, was under active investigation by the Texas Securities Board relating to fraudulent conduct in both Carbon IQ and his prior company, Plot.

146. On July 12, 2022, Wang emailed Cantey stating that Delaware had confirmed the company's amended and restated charter had not been filed, which meant the preferred shares issued in the March 2022 Series Seed round were not legally authorized and did not exist. Wang explicitly stated: "the investors don't hold any preferred shares." She further explained that the company could not proceed with future financing unless the defective charter was corrected, and she laid out two options: (1) file a Certificate of Validation under Delaware General Corporation

Law ("DGCL") §204 to retroactively validate the March Series Seed round, or (2) execute a revised Series Seed round altogether.

147. Cooley subsequently prepared and executed a DGCL §204 ratification process, including filing a Certificate of Validation and an Amended and Restated Charter with Delaware to retroactively authorize the previously invalid preferred shares. These corrective steps were taken without any disclosure to Plaintiffs.

148. At the time, Cooley was simultaneously negotiating board compensation and governance terms with Plaintiffs and knew that Plaintiffs had already invested $90,000 into the March 2022 round and that Plaintiffs' three prior SAFE investments, totaling $234,000, were legally dependent on that round's validity in order to convert into equity.

149. By concealing the invalidity of the March 2022 financing and then engineering its undisclosed retroactive validation, Cooley caused Plaintiffs' three prior SAFE investments ($200,000 on October 12, 2020, $24,000 on July 15, 2021, and $10,000 on March 11, 2022) to convert into equity, without disclosure, consent, or opportunity to preserve their rights under the original instruments.

~~56.~~150. These omissions deprived Plaintiffs of the ability to rescind their March 2022 investment and to prevent conversion of the earlier SAFEs. Cooley's purposeful and knowing undisclosed actions directly ~~relating to his actions as CEO and the then sole board member of Carbon IQ as well as relating to an ongoing Texas State Securities Board investigation into Cantey concerning fraudulent activities by the Texas State Securities Board in connection with a prior entity Cantey had been involved with in Texas~~resulted in the loss of Plaintiffs' legal and financial protections across their entire $464,000 investment portfolio in Carbon IQ.

57. Had Cooley Defendants disclosed these material facts, Plaintiffs would not have made additional investments in Carbon IQ in July 2022.

58. Cooley Defendants knew and intended that their nondisclosure of these material facts would cause Plaintiffs to continue to invest in Carbon IQ and that the continued purposeful nondisclosure of these material facts would further act as an inducement to Mr. Gould to agree to later accept a position as a Director of Carbon IQ on September 1, 2022.

151. By concealing the invalidity of the March 2022 Series Seed financing and then engineering its retroactive validation without disclosure, Cooley caused Plaintiffs' three prior SAFE investments ($200,000 on October 12, 2020, $24,000 on July 15, 2021, and $10,000 on March 11, 2022) to automatically convert into equity. As a result, Plaintiffs lost significant contractual rights, including their board observer rights, financial inspection and information rights, participation rights, and most-favored-nation protections, all of which applied while the investments remained in SAFE form.

152. Plaintiffs were denied the opportunity to challenge the conversion, enforce their SAFE terms, or seek rescission of the March 2022 investment based on the material undisclosed defects known to Defendants. Defendants' concealment and unilateral corrective actions stripped Plaintiffs of their ability to preserve the value, protections, and negotiability of their original investments, wrongfully induced the additional July 18, 2022 SAFE and exposed the full $464,000 of investments made by Plaintiffs to equity risk and related litigation.

153. Had Defendants not concealed these material facts and made these misrepresentations Plaintiffs would not have executed the July 18, 2022 SAFE, and would have demanded rescission and reimbursement of the $90,000 Series Seed investment from March 2022,

and preserved their rights under the original SAFE instruments totaling $234,000, which were improperly and retroactively converted into equity without disclosure or consent.

154. Defendants knew or were reckless in not knowing that their scheme, concealment, misrepresentations, and omissions would materially mislead Plaintiffs and cause them to make the July 2022 investment and forgo enforcement of their prior investment rights.

155. Plaintiffs reasonably relied on ~~Cooley Defendants omissions of material facts. As a~~ Defendant's misrepresentations and material omissions in connection with the July 18, 2022 securities purchase.

156. As a direct and proximate result of ~~Cooley Defendants violation~~Defendant's violations of §10(b) ~~of the Exchange Act~~ and Rule 10b-5~~,~~(a), (b) and (c), Plaintiffs have suffered ~~significant~~substantial financial harm, including but not limited to: the loss of ~~their~~$464,000 in investment~~, legal expenses, liability~~ capital, exposure to litigation in the Refinery ~~Litigation~~Lawsuit, extensive legal fees, and ~~related~~other consequential and reputational damages.

**WHEREFORE**, Plaintiffs request judgment in their favor against Defendants Cooley, Hallinan and Wang, jointly and severally, and seek:

- Compensatory damages;
- Consequential and special damages;
- Punitive damages as permitted by law
- Full indemnification for all liabilities, costs, and attorneys' fees incurred or to be incurred in the Refinery Litigation;
- Attorneys' fees and costs of suit;
- Pre- and post-judgment interest;
- And such other and further relief as this Court deems just and proper.

**COUNT II**

**(Common Law Fraud)**

~~59.~~157. Plaintiffs repeat and reallege each and every allegation set forth above as if more fully stated herein.

158. ~~Cooley~~ Defendants Cooley, Hallinan and Wang made deliberate fraudulent ~~representations directly,~~misrepresentations and ~~by omission,~~omissions to Plaintiffs, with the intent to wrongfully induce Plaintiffs to proceed with an additional $140,000.00 SAFE on July 18, 2022, including~~,~~ but not limited to~~, purposely and knowingly concealing critical material information regarding~~ the following:

a) Misrepresenting in the July 18, 2022 SAFE that Carbon IQ was not in violation of any material statutes, rules or regulations applicable to Carbon IQ;

b) Misrepresenting in the July 18, 2022 SAFE that Carbon IQ was not in breach of any material debt or contract that could reasonably be expected to have a material adverse effect on Carbon IQ;

c) Purposefully concealing numerous known corporate defects and deficiencies and regulatory violations, including Cooley's knowledge that preferred shares had never been issued to Plaintiffs despite representations that they would be issued in March 2022, to induce Plaintiffs' July 18th additional SAFE investment and prevent Plaintiffs from exercising their right to rescind the March financing;

d) Failing to disclose the existence of the Boisvert Litigation, in which Cooley represented Cantey and Carbon IQ, and which contained serious fraud allegations against Cantey;

e) Failing to disclose material evidence of Cantey's ~~known~~ fraudulent ~~activities and falsely~~conduct, including forged governance documents, which Defendants Cooley, Hallinan and Wang, as well as Tu and Mayhugh, had in their possession by mid-June 2022; and

f) Failing to disclose that Cantey was the subject of an active investigation by the Texas State Securities Board related to investor fraud in a prior venture.

159. In addition, Cooley, Hallinan, and Wang made fraudulent misrepresentations and omissions to Plaintiffs to induce Gould to accept a Board seat at Carbon IQ by:

a) Falsely confirming to Plaintiffs that the existence of D&O insurance existed to cover Mr. Gould as a Directorcoverage, despite knowing Cooley Defendants had , based on an April 28, 2022 email from Cantey, that no such evidence that policy existed, and that Carbon IQ had no coverage available to defend against the Boisvert Litigation or to protect incoming directors such as Gould;

b) Failing to disclose that Carbon IQ's litigation exposure, corporate governance failures, and Cantey's misconduct rendered it highly unlikely or impossible for Carbon IQ to obtain D&O insurance existed, which, in ; and

a)c) Withholding material facts about the Boisvert Litigation, the Texas securities investigation, and the fact, that they knew Carbon IQ did not existhave D&O insurance when notified by Cantey in April 2022 that, if disclosed, would have deterred any reasonable person from accepting a fiduciary position at the Company.

Cooley Defendants knew or should have known that

160. Cooley, Hallinan and Wang's misrepresentations and omissions were intentional and knowing, or, at a minimum, made recklessly.

60.161.Cooley, Hallinan and Wang knew Plaintiffs would rely on their material misrepresentations and omissions of material fact.

61.162.Plaintiffs reasonably relied on Cooley Defendants', Hallinan and Wang's fraudulent misrepresentations and omissions of material fact to their detriment.

62.163.Plaintiffs suffered damages as As a direct and proximate result of Defendants Cooley Defendants' purposeful, Hallinan, and Wang's fraudulent misrepresentations and knowing omissionsconcealment of material factfacts, Plaintiffs suffered substantial harm, including the loss of their $140,000 July 18, 2022 SAFE investment, incurring significant legal expenses, exposure to liability exposure in the Refinery Litigation, and other related consequential damages.

**WHEREFORE**, Plaintiffs request entry of judgment in their favor and against Defendants Cooley, Hallinan, and Wang, jointly and severally, awarding:

- Compensatory damages;
- Consequential damages;

- Punitive damages as allowed by law;
- Full indemnification for any and all liability, legal fees, and costs related to the Refinery Litigation;
- Attorneys' fees and costs of suit;
- Pre- and post-judgment interest; and
- Such other further relief as the Court may deem just and proper.

**COUNT III**

**(Aiding and Abetting Fraud)**

63.164. Plaintiffs repeat and reallege each and every allegation set forth above as if more fully stated herein.

165. Cooley Defendants Cooley, Hallinan and Wang knowingly assistedaided and abetted Cantey in his fraudulent activities by providing legal guidance and deliberately working in concert with Cantey to conceal and fail to disclose material information to shareholders, investors and the board, including purposely and knowingly concealingprocuring an additional $140,000 SAFE investment from Plaintiffs critical material information concerning known fraudulent activity by Cantey and falsely confirming to , depriving Plaintiffs that D&O insurance existed to cover Mr.of their right to seek the return of their March $90,000 Series Seed investment and knowingly aided and abetted Cantey to induce Gould asto accept a Director when Cooley board seat that exposed him to significant financial harm, providing substantial assistance to Cantey in obtaining the financing and ensuring Gould accepted the board seat.

64.166. Defendants knew that they had no evidence that such insurance existed, whichdid so by: 1) purposefully approving the misrepresentation of material facts in factthe July 18th SAFE and/or willfully turning a blind eye to known false representations in the July 18th SAFE, and 2) falsely confirming that Carbon IQ had D&O insurance when they knew Carbon IQ

did not exist.previously have D&O insurance, they knew that the uninsured (and purposefully undisclosed) Boisvert Litigation would have made it extremely difficult to obtain, and they knew Cantey had already engaged in past corporate fraudulent conduct, was under investigation for securities fraud in New Jersey, had committed numerous corporate violations and was untrustworthy.

65. Cooley Defendants actions and omissions amounted to aiding and abetting fraud, as they purposely and knowingly enabled Cantey to continue defrauding investors, including Plaintiffs.

167. As a direct Plaintiffs were intended to and did reasonably rely on Cooley, Hallinan and Wang's advice and assistance, as Carbon IQ's prominent corporate counsel, with respect to the review and preparation of investment documents for Carbon IQ financing rounds, including the July financing round resulting in the July 18th SAFE and with respect to Defendants' false representations and omissions concerning Plaintiffs' investments, shares and the existence of D&O insurance.

168. Plaintiffs would not have entered into the July 18th SAFE and would not have later accepted the board position if Cooley, Hallinan and Wang had not reviewed and approved Carbon IQ's SAFE that contained material misrepresentations and omissions and had not knowingly failed to disclose material fraud by Carbon IQ's sole director.

66.169. As a direct and proximate result of Defendants Cooley Defendants', Hallinan and Wang's knowing and substantial assistance in aiding and abetting of Cantey's fraud., Plaintiffs suffered financial and legal harm, including the loss of their investment,investments, substantial legal expenses, exposure to personal liability exposure in the Refinery Litigation, and relatedother consequential damages.

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants Cooley, Hallinan, and Wang, jointly and severally, awarding:

- Compensatory damages;
- Consequential damages;
- Punitive damages as permitted by law;
- Full indemnification for all costs, expenses, legal fees, and liability incurred in connection with the Refinery Litigation;
- Attorneys' fees and costs of suit;
- Pre- and post-judgment interest; and
- Such other and further relief as the Court may deem just and proper.

**COUNT IV**

**(Negligent Misrepresentation)**

~~67.~~170. Plaintiffs repeat and reallege each and every allegation set forth above as if fully stated herein.

~~68. Cooley~~ Defendants Cooley, Hallinan and Wang negligently made false representations~~, both directly~~ and ~~by omission,~~material omissions to Plaintiffs~~.~~

171. ~~Cooley Defendants negligently, at best, failed~~, including but not limited to ~~timely inform Plaintiffs of critical material information regarding Cantey's fraudulent activities. They also negligently, at best, falsely represented to Mr. Gould~~the following:

a) Misrepresenting in the July 18, 2022 SAFE that Carbon IQ was not in violation of any material statutes, rules or regulations applicable to Carbon IQ;

b) Misrepresenting in the July 18, 2022 SAFE that Carbon IQ was not in violation of any material debt or contract that could reasonably be expected to have a material adverse effect on Carbon IQ;

c) Failing to disclose, or to correct, misrepresentations in the SAFE by disclosing the existence and details of the Boisvert Litigation and the associated allegations against Cantey;

69. Falsely confirming that adequate D&O insurance was in place to cover Mr. Gould as a Director, when no such insurance existed.

d) Cooley Defendants , and when they knew or should have known it did not exist.

70.172. Cooley, Hallinan and Wang knew or reasonably should have known that Plaintiffs would rely on their material misrepresentations and omissions of material fact when deciding to invest in Carbon IQ on July 18, 2022 and when Gould agreed to accept a position as a Director of Carbon IQ on September 1, 2022.

173. Plaintiffs reasonably relied, to their detriment, on Cooley Defendants' the material misrepresentations and omissions of material facts concerning Cantey's fraudulent misconduct Cooley, Hallinan and Wang when Plaintiffs they invested an additional $140,000 in Carbon IQ in July 2022.

71.174. Cooley, Hallinan and Wang's material misrepresentations concerning the non-issuance of preferred shares to Plaintiffs from the March 22, 2022 Series Seed Round deliberately deprived Plaintiffs of the ability to recoup the March investments of $100,000.00 in Carbon IQ in July 2022. and induced the July 18, 2022 SAFE investment of $140,000.00 that would not have been made if Cooley had not made material misrepresentations and omissions detailed herein.

72. Plaintiffs further reasonably relied, to their detriment on Cooley Defendants , on Defendants' material misrepresentations and omissions of material facts in the July 18th SAFE, their continued failure to disclose to Plaintiffs correct the known misrepresentations and omissions of material fraudulent activities of Cantey both before and after facts while inducing Gould accepted the to accept a Board position on September 1, 2022.

73.175.Plaintiff Gould reasonably relied to his detriment on Cooley Defendants material misrepresentation concerning, and their repeated confirmations of the existence of D&O insurance when Gould, based on Cooley Defendants' misrepresentation,their material misrepresentations and omissions of material fact, Plaintiffs entered into the July 18th SAFE and when Gould accepted a board of directorBoard position on September 1, 2022, a position that he otherwise would not have accepted absent Cooley Defendants' misrepresentationthe misrepresentations and wrongful omissions of material fact.

74.176.Cooley Defendants The misrepresentations and omissions of material fact by Defendants Cooley, Hallinan and Wang directly and proximately caused Plaintiffs to suffer extensivesubstantial monetary damages, including the loss of their investment, significant legal expenses, liability exposure in the Refinery Litigation, and other related consequential damages.

**WHEREFORE**, Plaintiffs request that judgment be entered in their favor and against Defendants Cooley, Hallinan, and Wang, jointly and severally, awarding Plaintiffs:

- Compensatory damages;
- Consequential damages;
- Full indemnification from Defendants Cooley, Hallinan, and Wang for all costs, expenses, legal fees, and liability arising from the Refinery Litigation;
- Attorney's fees and costs of suit;
- Pre- and post-judgement interest; and
- Such other and further relief as the Court may deem just and proper.

## COUNT V

**(Breach of Fiduciary Duty and Legal Malpractice)**

75.177. Plaintiffs repeat and reallege each and every allegation set forth above as if fully stated herein.

76. Cooley Defendants owed fiduciary duties to Plaintiffs as a shareholder, Hallinan and investor in Carbon IQ, and to Mr. Gould individually as an anticipated and subsequently appointed member of the Board of Carbon IQ. These duties included, but were not limited to, the duties of disclosure, good faith, due care, honesty and in the obligation to avoid self-dealing.

77. Cooley Defendants breached their fiduciary duties to Plaintiffs by, among other things, purposely, recklessly and/or negligently failing to disclose known material fraudulent conduct by Cantey both with respect to Carbon IQ and the prior business entity Cantey was involved with. Additionally, Cooley Defendants falsely confirmed to Mr. Gould that Carbon IQ had sufficient D&O insurance in place to cover Mr. Gould if he were to accept a position on Carbon IQ's Board of Directors when Cooley Defendants knew or should have known no such insurance existed, and thereafter continuing to assist Cantey and Carbon IQ in obtaining additional financing by purposely concealing and withholding critical material information concerning Cantey's fraudulent misconduct.

78. Cooley Defendants breaches of fiduciary duty were the direct and proximate cause of extensive economic damages suffered by Plaintiffs, including the loss of their investment, legal expenses, liability exposure in the Refinery Litigation, and related consequential damages.

**COUNT VI**

(Legal Malpractice)

79. Plaintiffs repeat and reallege each and every allegation set forth above as if more fully stated herein.

80. Cooley DefendantsWang served as retained corporate and defense counsel for both Carbon IQ and for Cantey at all relevant times mentioned herein.

81. As such, and under the circumstances set forth herein, Cooley Defendants owed a duty of care to Plaintiffs as shareholders and investors in Carbon IQ and to Gould as a potential and subsequently appointed board member of Carbon IQ.

82.178. Cooley Defendants breached their duty of care to Plaintiffs when, among other things, from June 2022 through October 2022, Cooley Defendants knowingly and deliberately, and during all relevant times herein failed to disclose to Plaintiffs the known fraudulent misconduct of Cantey as presented to Cooley Defendants in and through the that they were also representing Cantey individually in the undisclosed Boisvert Litigation (including an ongoing Texas State Securities Board investigation against Cantey) which Cooley Defendants were actively defending against on behalf of both Cantey and Carbon IQ.

179. Cooley DefendantsCooley, Hallinan and Wang were directed by Cantey to assist Plaintiffs with matters relating to Plaintiffs' investments in Carbon IQ, including but not limited to correspondence, document review, and corporate governance inquiries and issues relating to an anticipated additional investment by Plaintiffs in July.

180. Cooley, Hallinan and Wang were further directed by Cantey to assist Plaintiffs with matters relating to an anticipated board position for Gould.

181. As detailed herein, Cooley, Hallinan, and Wang a) communicated directly with Plaintiffs, including assisting and advising Plaintiffs with the drafting of a side letter agreement

related to Plaintiffs' March 2022 Series Seed securities investments and addressing corrections relating to Plaintiffs pro-rata rights, b) communicated with and advised Plaintiffs concerning Plaintiffs' anticipated additional SAFE investment in July 2022, c) prepared, vetted and approved Carbon IQ's SAFE's for its July 2022 fundraising round, and d) communicated with and advised Plaintiffs concerning Gould's prospective appointment to Carbon IQ's Board of Directors. In doing so, Cooley, Hallinan, and Wang established a special relationship of trust and confidence with Plaintiffs, undertaking a direct advisory role and creating fiduciary obligations and duty of care obligations to act in good faith and disclose material facts.

182. As counsel to Carbon IQ and as individuals actively involved in facilitating Carbon IQ's financing efforts, Cooley, Hallinan, and Wang knew or should have known that Plaintiffs would reasonably rely on their representations and conduct.

183. Plaintiffs reasonably expected Cooley, Hallinan, and Wang to act with honesty, transparency, due care, and in good faith concerning Plaintiffs' existing investments, anticipated additional July 2022 investment and Gould's acceptance of a board position.

184. In undertaking direct communications with Plaintiffs, including to facilitate and induce Plaintiffs' July 18, 2022 $140,000 SAFE investment and Gould's later acceptance of a board seat, Cooley, Hallinan, and Wang assumed a fiduciary duty to Plaintiffs and created a fiduciary relationship and an implied attorney-client relationship.

185. Cooley, Hallinan and Wang's fiduciary duty and duty of care included an obligation to act honestly, with due care, and in good faith, and to disclose material information known to them that would bear on Plaintiffs' investment and corporate governance decisions.

186. Cooley, Hallinan and Wang breached their fiduciary duty to Plaintiffs and committed legal malpractice by engaging in a pattern of concealment, material misrepresentations

and omissions, and failing to disclose the conflict of interest presented by their dual individual representation of Cantey in the undisclosed Boisvert Litigation.

187. With respect to Plaintiffs July 18th SAFE investment Cooley, Hallinan and Wang's breaches of fiduciary duty and legal malpractice by violating their duty of care consists of, but is not limited to, the following:

a) Misrepresenting in the July 18, 2022 SAFE agreement that Carbon IQ was not in violation of any material statutes, rules, or regulations applicable to the company as they knew, or should have known, or recklessly disregarded that the Boisvert Litigation alleged and established numerous violations that made this representation false;

b) Misrepresenting in the July 18, 2022 SAFE agreement that Carbon IQ was not in violation of any material debt obligations or contracts that could reasonably be expected to have a material adverse effect on the company as they knew, or should have known, or recklessly disregarded that the Boisvert Litigation alleged and established contract obligations and fraud that made this representation false;

c) Failing to disclose multiple known corporate deficiencies and violations detailed herein, including but not limited to the fact that no preferred shares were ever issued to Plaintiffs in connection with their March 2022 investment, thereby depriving Plaintiffs of the opportunity to recoup their $100,000 investment;

d) Failing to disclose the existence and details of the Boisvert Litigation;

e) Failing to disclose material evidence of fraud by Cantey - Carbon IQ's sole director and CEO – which was in the possession of Cooley, Hallinan, Wang, Tu, and Mayhugh by mid-June 2022 and failing to disclose the conflict of interest presented by their dual representation of Cantey individually with respect to serious claims against Carbon IQ relating to fraudulent conduct by Cantey;

f) Failing to disclose that Cantey was the subject of an active investigation by the Texas State Securities Board.

188. Each of the above misrepresentations and omissions of material fact are further evidence of Cooley, Hallinan and Wang's breaches of fiduciary duty and legal malpractice in connection with Gould's acceptance of a board position on September 1, 2022.

189. Specifically, following Plaintiffs' wrongfully induced $140,000.00 SAFE investment on July 18, 2022, Cooley, Hallinan and Wang continued to breach their fiduciary duties to Plaintiffs and committed legal malpractice by violating their duty of care to Plaintiffs by, among other things:

a) Continuing to fail to correct the material misrepresentation in the July 18, 2022 SAFE agreement that Carbon IQ was not in violation of any material statutes, rules, or regulations applicable to the company;

b) Continuing to fail to correct the material misrepresentation in the July 18, 2022 SAFE agreement that Carbon IQ was not in violation of any material debt obligations or contracts that could reasonably be expected to have a material adverse effect on the company;

c) Continuing to fail to disclose to Plaintiffs the numerous known corporate deficiencies and violations, including but not limited to the failure to issue preferred shares to Plaintiffs in connection with their March 2022 investment, and further implying that the shares existed when they did not;

d) Continuing to fail to disclose to Plaintiffs the existence and details of the Boisvert Litigation;

e) Continuing to fail to disclose to Plaintiffs the material evidence of fraud by Cantey, Carbon IQ's sole director and CEO, that Cooley, Hallinan, Wang, Tu, and Mayhugh had in their possession by mid-June 2022;

f) Continuing to fail to disclose to Plaintiffs the existence of an active investigation by the Texas State Securities Board into Cantey;

g) Continuing to fail to disclose the conflict of interest from their dual representation of Cantey individually with regard to the serious claims of misconduct by Cantey relating to Carbon IQ; and

h) Misrepresenting the existence of D&O insurance to protect Gould as a member of Carbon IQ's board to protect Gould in his board position which they knew, or should have known, did not exist.

190. If Cooley, Hallinan, and Wang had not breached their fiduciary duty to Plaintiffs and committed legal malpractice by breaching their duty of care in making the material misrepresentations and omissions detailed herein Plaintiffs would not have made the July 18, 2022

investment or accepted a Board seat, would have avoided interactions with Refinery and would have taken steps to demand the return of their March 2022 investment.

~~83.~~191.Cooley, Hallinan and Wang knew or should have known that timely disclosure to Plaintiffs of ~~Cantey's fraudulent conduct,~~the details of the Boisvert Litigation and their conflict of interest would have caused Plaintiffs to refuse to invest additional funds in Carbon IQ in July 2022.

192. ~~Cooley Defendants~~Cooley, Hallinan and Wang knew or should have known that timely disclosure of the multiple corporate governance violations they had knowledge of prior to Plaintiffs July 18, 2022 SAFE would have caused Plaintiffs to refuse to invest additional funds in Carbon IQ in July 2022.

193. Cooley, Hallinan and Wang knew or should have known that timely disclosure of the failure of Carbon IQ to issue Plaintiffs' preferred shares following the March 2022 investments would have caused Plaintiffs to seek the return of the prior investments.

~~84.~~194.Cooley, Hallinan and Wang knew or should have known that Carbon IQ did not have any D&O insurance but nevertheless falsely confirmed to Gould that adequate D&O insurance was in place to cover Gould as a Director of Carbon IQ.

~~85.~~195. Cooley ~~Defendants~~, Hallinan and Wang knew or should have known that if they had not falsely confirmed the existence of D&O insurance ~~Mr.~~ Gould would have refused appointment to the Board of Directors of Carbon IQ on September 1, 2022.

~~86.~~196.Cooley ~~Defendants~~, Hallinan and Wang intended and knew Plaintiffs would rely on their false representations and omissions of material facts.

~~87.~~197.Plaintiffs in fact relied upon Cooley ~~Defendants~~, Hallinan and Wang's false representations and omissions of material fact to Plaintiffs' detriment.

198. Plaintiffs suffered extensive monetary damages as a result of Cooley Defendants , Hallinan and Wang's breaches of their fiduciary duty and legal malpractice caused Plaintiffs to make decisions they would have otherwise avoided, including the additional July 18th investment, acceptance of the board seat, and the interactions with Refinery Management.

88.199.Cooley, Hallinan and Wang's breaches of fiduciary duty and legal malpractice were the direct and proximate cause of significant economic damages suffered by Plaintiffs, including the loss of their investment, substantial legal expenses, personal liability exposure in the Refinery Litigation, and relatedother consequential damages.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs request entry ofthat judgment be entered in their favor of Plaintiffs and against the Defendants Cooley, Hallinan, and Wang, jointly and severally, awarding Plaintiffs the following relief:

- Compensatory damages;
- Consequential damages;
- Punitive damages as allowed by law;
- Compensatory damages;
- Consequential damages;
- Full indemnification by and from Cooley Defendants Cooley, Hallinan, and Wang for any and all costs, expenses, legal fees, and liability relating toarising from the Refinery Litigation;
- Attorneys' fees and costs of suit;
- Attorney's fees and costs of suit;
- Pre- and post-judgement interest; and
- Such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs hereby demand a jury trial with respect to all Counts herein.

Dated: ~~September 26, 2024~~June 30, 2025

*/s/ Kathleen M. DalCortivo*
Kathleen M. DalCortivo
**DalCortivo Law Offices, LLC**
680 Hooper Ave., Bldg. A, Suite 101
Toms River, NJ 08753
Tel: (732) 286-0100
Fax: (732) 286-0101
NJ Attorney ID No.: 050121991
*Attorneys for Plaintiffs*