**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

GOULD VENTURES, LLC, et al.,

      **Plaintiffs,**

        **v.**

COOLEY, LLP, et al.,

      **Defendants.**
_____

Civil Action Number:
**24-CV-9485(RK)**

**Teleconference**

Clarkson S. Fisher Federal Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608
Wednesday, September 10, 2025
Commencing at 12:30 p.m.

**B E F O R E:**

          **THE HONORABLE ROBERT KIRSCH,**
          **UNITED STATES DISTRICT JUDGE**

          **THE HONORABLE TONIANNE J. BONGIOVANNI,**
          **UNITED STATES MAGISTRATE JUDGE**

**A P P E A R A N C E S**

    DALCORTIVO LAW OFFICES, LLC
    BY:  KATHLEEN M. DALCORTIVO, ESQUIRE
    81 East Water Street, Suite 2B
    Toms River, NJ 08753
    For the Plaintiffs

    SAUL EWING LLP
    BY:  SARAH A. SULLIVAN, ESQUIRE
    One Riverfront Plaza, Suite 1520
    Newark, NJ 07102
           -and-
    COOLEY LLP
    BY:  BRIAN M. FRENCH, ESQUIRE
    55 Hudson Yards
    New York, NY 10001
    For the Defendants

Paula Horovitz, Official Court Reporter
paulahorovitz.njd.uscourts@gmail.com - 609-815-2755
Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription.

United States District Court
District of New Jersey

(TELEPHONIC PROCEEDINGS held in open court before The Honorable Robert Kirsch, United States District Judge, at 12:30 p.m.)

THE COURT:  Good afternoon.  It's Robert Kirsch.

MS. DALCORTIVO:  Good afternoon.

MS. SULLIVAN:  Good afternoon, your Honor.

THE COURT:  The matter is Gould*, et al* v. Cooley*, et al.*  It's 24-9485.

I have Ms. Dalcortivo.  I hope I didn't botch your name.  For the plaintiff.

MS. DALCORTIVO:  You did not.

THE COURT:  Ms. Sullivan and Mr. French for the defendant Cooley.

I have listening my very close friend and my colleague, Judge Bongiovanni, who is in my chambers.  So I'm going to start this:

The Court issued a very lengthy opinion granting in part and denying in part a Rule 12 motion filed by the defendants, and a couple of causes of action remained.  There was an amended complaint, and, like Ground Hog Day, here we are again.

I've learned something in anticipation of this teleconference which I frankly was not aware of.  I was quite clear, and you can take a look at ECF 24 and 25, that I expected discovery to go forward in this case, only to learn in

United States District Court
District of New Jersey

the very recent past in anticipation of today, that that did not happen. And it didn't happen because, as Judge Bongiovanni educated me, there was some vehicle, some avenue, however narrow, that there could be a resolution, a global resolution here, because there's a number of sort of interrelated litigations across the country, in Ohio in particular.

So there was a request to stay discovery, which Judge Bongiovanni allowed pending global mediation. This is months ago.

So what is the status of that global mediation? I presume it's happened.

MS. DALCORTIVO: The global mediation has not been scheduled. Cooley is not participating in it, so I guess calling it a global mediation would be incorrect. They had declined to participate in that.

What we are trying to do from the plaintiffs' side is -- so the bankruptcy trustee has also filed suit against Cooley, which is -- what would have tied them into this. So there is a complaint that relates from the bankruptcy directly to Cooley. There's my client's complaint against Cooley. There's a bankruptcy action that is -- and then there's another action that's stayed. That's the Refinery litigation with Refinery asserting claims against my client.

We were trying to bring all of the parties together to try to resolve it. Cooley wasn't willing, and we were talking

United States District Court
District of New Jersey

with the bankruptcy trustee over the summer about trying to resolve with Refinery, that matter, and wrap up the bankruptcy estate.  We are waiting right now for final word from the bankruptcy trustee, which I expect to have by the end of this week.  And he had advised me of that last Thursday, that he would have an answer for me this Friday.

So it's been a little difficult pushing that along.  I guess maybe particularly because of the summer, although I have been staying on top of it, because resolving the Refinery litigation, whether that is through closing of the bankruptcy and a motion there or working something out directly with Refinery does have a very significant, substantial impact on this litigation.

So we were looking to do that.  We've had some promising communications with the trustee about that.  We've been communicating directly with Refinery and then trying to get that resolved.  But I don't have a final answer yet.

THE COURT:  So thank you for that.  That's helpful. And I want to sort of distill what it is that you just said.

So are you telling me that Cooley's refusal to participate in mediation does not affect your belief that a resolution of those other cases might be helpful here, whether Cooley participated or not?  Am I right?

MS. DALCORTIVO:  Correct.  Initially, Refinery was refusing to move forward with the mediation because Cooley was

Case 3:24-cv-09485-RK-TJB   Document 50   Filed 10/07/25   Page 5 of 9 PageID: 1008

going to be part of it.  But in subsequent discussions with the bankruptcy trustee, if we could, regardless whether Cooley participated -- if we could resolve the Refinery litigation, that alone would have a significant impact on this case, the plaintiffs' position in this matter against Cooley.

THE COURT:  Okay.  I'm going to ask you another question.

In light of that, I would be asking my friend and colleague, who I am looking at right now, and I know you're speaking with her on September 26.  She can't wait.  My request of my friend, subject to her approval, because she really oversees discovery, I would say -- I thought this thing was knee-deep in discovery.  So far this thing has been alive on my docket for a year, only to learn very recently that nothing has happened.  Nothing has happened except I wrote a 36-paged opinion, and I might have to dig in yet again pre-discovery, and I'm not inclined to do that.

So my request of my colleague will be, and this is subject to you, counsel for the plaintiff:  I would like discovery to begin here.  I thought it was.  And unless you tell me that your preference would be to continue the status quo because you think a resolution of the other litigations really might be helpful and you don't want to spend the time, money, resources, et cetera, that would be something that's useful to me.

United States District Court
District of New Jersey

If, on the other hand, enough is enough, then, as I believe was happening over the last six months, discovery in my case -- this case -- will commence subject to Judge Bongiovanni.  I don't dictate to her -- she's been at this for a very long time and is very skilled.  She has her own independent view.

But my view would be, unless you requested the status quo to continue, my inclination is discovery should begin on the claims which have been alive and well as to the aspect that I denied previously.

Am I making sense, Ms. Dalcortivo?

MS. DALCORTIVO:  Yes.  Yes, you are, your Honor.

And I would ask, and our position would be that we would like the status quo to continue.  And our intent was to get this answer, which I have been pressing for, from the trustee, and then we would want to move forward very promptly with the discovery.  If we find out at the end of next week that this cannot work with the trustee, it will not work or won't be timely, then we would definitely want to move forward.

So, yes, on the status quo for a brief period of time.  And I did know and have it calendared, the conversation on the 26th, and our intent is to know by then whether or not we would be moving forward, or if we would be able to say, you know what, we made significant progress here, we think that it should continue.

THE COURT:  Well, you'll apprise Judge Bongiovanni of the status on the 26th?

MS. DALCORTIVO:  Correct.

THE COURT:  In the meantime, I'm not going to entertain a serial motion to dismiss since it makes no sense for me to dig in.  If the parties aren't doing their jobs of discovery, I'm not going to entertain yet another motion to dismiss while there's a prospect of resolution.

I will say this -- Ms. Sullivan, will you be speaking for the defendant or will Mr. French?

MS. SULLIVAN:  It depends on the question, your Honor. I will try to answer it for you.

THE COURT:  If it's an unpleasant question for Cooley, it will be Mr. French.  Is that where we're going?

MS. SULLIVAN:  Mr. French will answer that question. That's right.

THE COURT:  Well, here is an observation.  There seems to be raising for the first time a potential statute of limitations.  That wasn't raised in the initial.

First of all, it's very fact-intensive.  Those inquiries, generally speaking, are fact-intensive.  I don't believe it's proper under Rule 12, after you have had an opportunity to raise statute of limitations, to now raise it. Regardless, it is a fact-intensive inquiry, generally.

So in the event that I have the great joy of

United States District Court
District of New Jersey

contemplating another motion to dismiss here, it will not include a statute of limitations aspect.  It will be limited to the omissions, the material omissions argument.  Understood?

MS. SULLIVAN:  Yes, your Honor.

THE COURT:  That will be raised -- go ahead, Mr. French.

MR. FRENCH:  If I could add one point on that?

I understand what you're saying with respect to the theories that were present in the original complaint, but there is a new theory in this complaint that is also subject to a statute of limitations argument, and we of course did not raise it before because the theory wasn't pleaded.

THE COURT:  Mr. French, you will raise this at Rule 56 after there's discovery on that aspect.

MR. FRENCH:  Yes.

THE COURT:  Yes.  So I'm going to preserve the status quo.  We'll issue a text order consistent with what was discussed today from 30,000 feet, and Judge Bongiovonni and myself will reconvene immediately after the 26th.

And I'm not in any way -- I would welcome some sort of resolution here.  I get the sense that this is going to take a disproportionate amount of time when I have 400 other civil cases.  So if there's some sort of resolution -- I'm not dissuading the parties.  I'm not going to allow this to continue for posterity and nothing happen here.

United States District Court
District of New Jersey

So, Ms. Dalcortivo, I look forward to hearing through Judge Bongiovonni as to whether or not there is still a viable avenue that's helpful to resolving this case.  And, if not, well, it will be up to Judge Bongiovonni.  But my request will be to get going, and then I can revisit yet another Rule 12.  Understood?

MS. DALCORTIVO:  Understood, your Honor.

THE COURT:  Did I miss anything, Ms. Dalcortivo?

MS. DALCORTIVO:  No.

THE COURT:  Ms. Sullivan, Mr. French?

MS. SULLIVAN:  Nothing for the defendants.

MR. FRENCH:  No, your Honor.

THE COURT:  Okay.  Thanks, folks.

MS. DALCORTIVO:  Thank you.

MS. SULLIVAN:  Thank you, your Honor.

THE COURT:  Bye-bye now.

(The proceedings concluded at 12:46 PM)

- - - - - - - - - - - - - - - - - - - - - - - -
**FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**
- - - - - - - - - - - - - - - - - - - - - - - -

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/S/ Paula Horovitz, RMR, CRR
9/15/2025

*Court Reporter/Transcriber*

United States District Court
District of New Jersey